AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Guardian of the Estate of John Libman, a Minor, *et al.*, Plaintiffs-Appellants, v. ANCHOR ORGANIZATION FOR HEALTH MAINTENANCE, Defendant-Appellee (A. William Schafer, Defendant).

First District (5th Division)   No. 1—90—0780

Opinion filed March 1, 1991.—Rehearing denied April 1, 1991.

John C. Erb and Lynn Plum Duffey, both of Law Offices of Paul B. Episcope, Ltd., of Chicago, and Edward J. Kionka, of Carbondale, for appellants.

Max Douglas Brown, and Jerome N. Groark, Joan D. Lindauer, and Edward P. Dismukes, all of Rooks, Pitts & Poust, both of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

The above-named plaintiffs appeal from the dismissal of defendant Anchor Organization for Health Maintenance (Anchor) from their medical malpractice suit filed June 28, 1987. The matter still pends in the lower court against defendant Dr. A. William Schafer, who is not a party to this appeal. The dismissal order, which is the subject of this appeal, was made final and appealable by the trial court's inclusion of the necessary language as set forth in Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

The facts are as follows.

On June 28, 1987, plaintiffs, American National Bank and Trust Company of Chicago (American National), as guardian of the estate of John Libman, and Samuel Libman, John's father, filed a two-count complaint against Anchor and Dr. Schafer. In count I, the complaint alleged that at about 11:53 a.m. on January 23, 1986, Roberta Cohen-Libman was admitted to the labor and delivery unit of Hinsdale Hospital and at about 8:51 p.m. that same day, she gave birth to a son,

John. The attending physician, Dr. Schafer, licensed to practice obstetrics and gynecology by the State of Illinois and an agent and employee of Anchor, allegedly used forceps to aid the birth and delivery of John.

The complaint further alleged that John suffered permanent brain damage as a result of the negligent acts and omissions of both Anchor and Dr. Schafer, in that they failed to utilize the skill and knowledge of a reasonably qualified obstetrician/gynecologist by failing to recognize the signs and symptoms of fetal distress, by failing to order and perform a Caesarean section, and by allowing labor to continue for an excessive period of time. In count I American National requested recovery on behalf of John for the injuries he suffered. In count II Samuel Libman reiterated the allegations made in count I and then requested recovery for medical expenses and for the loss of society and companionship with his son.

On January 15, 1988, an amended three-count complaint was filed. Counts I and II were identical to those in the the original complaint. Count III, containing the same allegations as counts I and II, was added by Mrs. Libman, who was now included as a party-plaintiff. She also requested recovery for medical expenses and for her loss of society and companionship with her son.

Subsequently, Anchor filed a motion to dismiss, pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619), claiming that it was immune from actions of this type, pursuant to section 26 of the Voluntary Health Services Plans Act (VHSPA or the Act) (Ill. Rev. Stat. 1987, ch. 32, par. 620).

Plaintiffs responded to the motion by arguing (1) that a 1988 amendment to section 26 of the VHSPA, which rescinded the immunity previously granted to health organizations such as Anchor, should be applied retroactively to deny Anchor immunity in this case; (2) that even if the amendment to the immunity provision could not be applied retroactively, Anchor was not entitled to whatever immunity it might have enjoyed under the VHSPA because it failed to comply with section 7 of the Act (Ill. Rev. Stat. 1989, ch. 32, par. 601), by imposing restrictions, both directly and indirectly, upon its physicians; and (3) that the immunity provision of the Act, at least as applied to Anchor, was unconstitutional, constituting special legislation and violating equal protection and due process concerns.

On February 14, 1990, the trial court rejected plaintiffs' arguments and granted Anchor's motion, dismissing it from the cause of action. After the trial court denied plaintiffs' motion to reconsider, plaintiffs filed the instant appeal.

The appeal involves the application and effect of the Voluntary Health Services Plans Act (Ill. Rev. Stat. 1987, ch. 32, par. 595 *et seq.*), with respect to Anchor, in the context of a medical malpractice claim raised by plaintiffs. Plaintiffs contend, as they did in the lower court, that Anchor should not have been granted the statutory immunity provided under VHSPA because: (1) Anchor should be denied entitlement to the statutory immunity because it violated certain provisions of the Act; (2) the 1988 amendment to VHSPA, which eliminated the immunity provision for health corporations such as Anchor, should be applied retroactively; and (3) the immunity clause in VHSPA is unconstitutional, as applied to Anchor, because it violates the equal protection and due process clauses of both the Illinois and Feder.1 constitutions and constitutes special legislation under the Illinois Constitution.

Anchor argues that the issue of its alleged violations of the Act is not properly before this court because they were not pleaded below. Anchor also contends that all of the remaining issues raised by plaintiffs on appeal have been conclusively determined by *Moshe v. Anchor Organization for Health Maintenance* (1990), 199 Ill. App. 3d 585, 557 N.E.2d 541, *appeal denied* (1990), 133 Ill. 2d 559, 561 N.E.2d 698, and *Brown v. Michael Reese Health Plan, Inc.* (1986), 150 Ill. App. 3d 959, 502 N.E.2d 433, *appeal denied* (1987), 114 Ill. 2d 543, 508 N.E.2d 725.

While this court finds that some of the issues raised by plaintiffs in this appeal have been dispositively determined by the above-mentioned cases, we find it necessary to address other points plaintiffs have raised.

Section 26 of the VHSPA (Ill. Rev. Stat. 1987, ch. 32, par. 620), prior to the 1988 amendment, stated:

"A health services plan corporation shall not be liable for injuries resulting from negligence, misfeasance, malfeasance, nonfeasance or malpractice on the part of any officer or employee of the corporation, or on the part of any person, organization, agency, or corporation, rendering health services to the health services plan corporation's subscribers and beneficiaries."

In August 1988, the Illinois legislature amended portions of the VHSPA (Pub. Act 85—1246, eff. August 30, 1988), including section 26. The amended version of section 26 (Ill. Rev. Stat., 1988 Supp., ch. 32, par. 620) now reads:

"A health services plan corporation *incorporated prior to January 1, 1965, operated on a not for profit basis, and nei-*

*ther owned or controlled by a hospital* shall not be liable for injuries resulting from negligence, misfeasance, malfeasance, nonfeasance or malpractice on the part of any officer or employee of the corporation, or on the part of any person, organization, agency or corporation rendering health services to the health services plan corporation's subscribers and beneficiaries." (Emphasis added.)

It is undisputed that this amendment eliminated the statutory immunity for Anchor and all other corporations, except one, already chartered under the Act. (*Moshe v. Anchor Organization for Health Maintenance*, 199 Ill. App. 3d at 597-98; the only organization still immune under the Act is the Union Health Service.) Contrary to plaintiffs' assertion, however, the *Moshe* case, a factually similar medical malpractice action involving the same defendant as in this case (Anchor), which was decided by this division of the Illinois Appellate Court, First District, wholly disposed of the question of whether this amendment should be applied retroactively to causes of action that accrued prior to the date the amendment became law and we feel bound by the principle of *stare decisis* (see generally *Williams v. Crickman* (1980), 81 Ill. 2d 105, 405 N.E.2d 799) to follow our decision in that case.

In *Moshe*, a complaint was filed on September 29, 1983, against Anchor and doctors under contract with Anchor, by William Moshe, on behalf of his minor son, for injuries his son sustained as a result of alleged misdiagnosis and negligent treatment; and by Moshe and his wife, on their own behalf, for medical expenses and loss of society with their child. Plaintiffs attempted to hold Anchor liable, indirectly, for the alleged negligent acts and omissions of the doctors and, directly, based on certain policies, procedures, and regulations which allegedly inhibited the physicians' ability to provide quality health care to their patients. Anchor moved for dismissal from the suit based upon the immunity provision in section 26 of the VHSPA. Despite arguments against dismissal, including arguments that Anchor violated the "unique organizational structure" required by the statute, thereby relinquishing its right to insulation from liability (*Moshe*, 199 Ill. App. 3d at 593), the trial court dismissed Anchor from the action.

On appeal this court affirmed the dismissal. The *Moshe* decision held (1) that *Brown* left no doubt as to the constitutional legitimacy of the statutory immunity conferred upon corporations chartered under the VHSPA by section 26, prior to amendment; (2) that Anchor's "dual capacity," as both a VHSPA corporation and HMO, did not diminish its entitlement to the complete statutory immunity afforded it

by section 26 of the Act; and (3) that the 1988 amendment to section 26 was a "substantive" change rather than a "procedural" one, so that prospective rather than retrospective application must be presumed. Further, the court held that since the express language of the amendment did not overcome this presumption and a retrospective intent did not appear to be necessarily or unavoidably implied, retroactive application of the amendment was not allowed.

Despite the comprehensive consideration given to the issue of retroactive application of the 1988 amendment to section 26 by this court in *Moshe*, plaintiffs, citing *In re Support of Josic* (1979), 78 Ill. App. 3d 347, 397 N.E.2d 204, and *Cruz v. Puerto Rican Society* (1987), 154 Ill. App. 3d 72, 506 N.E.2d 667, as support, attempt to convince us that Anchor's right to immunity may be abrogated by the retroactive application of the amendment because the immunity was a "statutory creation" and not a vested right under common law.

We find plaintiffs' reliance on *Josic* and *Cruz* misplaced. Those cases stand for the proposition that a right of action, which was created purely by statutory enactment, could be abrogated by retrospective application of repealing legislation. (*Cruz*, 154 Ill. App. 3d at 76; *Josic*, 78 Ill. App. 3d at 350.) In *Cruz*, section 6—21 of the Dramshop Act (Ill. Rev. Stat. 1983, ch. 43, par. 135) had been interpreted by the courts as providing a remedy to the family of the inebriate. Subsequently, that section of the Dramshop Act was amended, effective September 12, 1985, directing that "nothing in this Act shall be construed to confer a cause of action" to the family of the intoxicated person. Thus, at the time the plaintiff filed its complaint on October 18, 1985, it did not allege an existing cause of action. The fact that such a cause of action may have existed at the time the incident occurred was of no consequence.

In *Josic*, the plaintiff attempted to modify portions of his divorce judgment. His petition for modification was denied because it had been filed on January 21, 1978, after the date that the Illinois Marriage and Dissolution of Marriage Act was made into law, and section 502(f) of the new Act precluded the type of modification being sought.

■ Clearly, these cases are distinguishable from the present case, where plaintiffs filed their initial complaint against Anchor on June 28, 1987, at a time when Anchor was entitled to the immunity granted to it under section 26 of the VHSPA, yet plaintiffs seek to take advantage of a change in the law which did not occur until August 1988. We respectfully decline to allow plaintiffs to do so, since we feel that such action would violate basic principles of statutory construction, namely, that amendatory acts are generally construed as

prospective (*Rivard v. Chicago Fire Fighters Union, Local No. 2* (1988), 122 Ill. 2d 303, 522 N.E.2d 1195), and would totally ignore the substantive/procedural analysis for determining whether an amendatory act should be applied retroactively, as set forth in *Rivard* and followed in *Moshe.*

Furthermore, plaintiffs' arguments fail to persuade this court that the legislature intended the immediate and early application of the 1988 amendatory act, and we find no reason to reverse our thinking, clearly expressed in *Moshe,* that the presumption of prospectivity accorded the 1988 amendment was not "overcome, either by the express language of Public Act 85—1246, or because a retrospective intent appear[ed] by necessary or unavoidable implication." *Moshe,* 199 Ill. App. 3d at 602.

We next consider the constitutionality of the immunity provision in section 26 of the Act. We realize, and plaintiffs acknowledge, that the constitutionality of this provision has already been addressed in the case of *Brown v. Michael Reese Health Plan, Inc.* (1986), 150 Ill. App. 3d 959, 502 N.E.2d 433. However, plaintiffs contend that in *Brown* the court found that the immunity provision was constitutional on its face, whereas here, they challenge the constitutionality of the provision as applied to Anchor, which operates under a dual capacity as a State-certified and federally qualified HMO as well as a voluntary health service plan. We agree with plaintiffs that the issue of constitutionality raised in this appeal was not reached in the *Brown* decision nor addressed in *Moshe.*

In *Brown,* another medical malpractice action, the plaintiff challenged the constitutionality of the statutory immunity granted to Michael Reese Health Plan, Inc., a health services plan corporation chartered under the VHSPA. The plaintiff claimed, just as the plaintiffs in the present action, that the grant of immunity was a violation of the equal protection clause of both the State and Federal constitutions and a violation of the special legislation clause of the Illinois Constitution. It was argued that the immunity from liability granted to that class of health providers, merely because they were chartered under the VHSPA, was arbitrary and unreasonable and that no rational basis existed to distinguish this class from any other class of health care providers.

The court rejected that argument, finding that the "legislature has clearly carved out a separate and distinct classification of health care providers," the members of which are distinguishable from other health care providers because they serve the unique function of both insurer and health care provider, because they are regulated by the

Department of Insurance, and because they are governed by specific legislative requirements. (*Brown*, 150 Ill. App. 3d at 961.) Consequently, the court found that there was a rational basis for immunizing the defendant health services plan corporation.

In *Brown*, however, there was no indication of whether the defendant, Michael Reese Health Plan, Inc., was, at the time of the alleged malpractice, acting in a dual capacity as both an HMO and a voluntary health services plan. Thus, there was no discussion of whether a health services plan corporation having such dual status should be denied the immunity it would ordinarily enjoy under its VH-SPA charter. This court in *Moshe* did, however, partially address this issue, finding that Anchor's dual status did not "preclude the operation of the immunity provision, as originally enacted, to bar all malpractice claims against it as a matter of law." (*Moshe*, 199 Ill. App. 3d at 594.) However, this court did not go on, in *Moshe*, to consider the constitutionality of applying the immunity provision to a dual status corporation such as Anchor, since this issue was not raised.

█ Whenever a court is faced with a challenge to the constitutionality of a statute on equal protection grounds, it must begin with the presumption that the classification created by the legislation is valid. (*People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 500 N.E.2d 34.) We must keep in mind that, as noted in *Brown*, the equal protection clause of the State and Federal constitutions does not deny a State the right to treat different classes of persons differently, but only requires equality between groups that are similarly situated. (*Brown*, 150 Ill. App. 3d at 960.) The party challenging the legislation has the burden of proving its unconstitutionality. (*People v. Bales* (1985), 108 Ill. 2d 182, 483 N.E.2d 517.) If the legislation does not create a suspect classification or infringe upon a fundamental right, but rather, involves economic or social welfare policy, it will be upheld against an equal protection challenge if rationally related to a legitimate State purpose. (*Brown*, 150 Ill. App. 3d 959, 502 N.E.2d 433.) All reasonable doubts are to be resolved in favor of upholding validity. (*People ex rel. Skinner*, 114 Ill. 2d at 259.) Furthermore, those standards used to determine an equal protection claim are also applicable when evaluating a claim that the statute constitutes special legislation under our Illinois Constitution. *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 468 N.E.2d 1162.

█ We have no doubt that the immunity provision in the Voluntary Health Services Plans Act, as originally enacted, was rationally related to a legitimate State purpose. The Act was originally devised so that an employer or union could provide an improved health ser-

vices program, in lieu of a traditional health insurance system. Thus, the voluntary health services plan corporations acted as insurers and it was logical to provide them with immunity.

Just as the court in *Brown* found, corporations chartered under the VHSPA were required to meet certain requirements, report to the Director of Insurance and fulfill various Insurance Code provisions. These special requirements did constitute an organizational structure that was unique at that time. Corporations organized under the Illinois HMO Act were not required to fulfill some of these same requirements.

However, in time, corporations such as Anchor began to deviate from their original function and purpose, while at the same time, the HMO Act was amended substantially (see Pub. Act 82—213, eff. Jan. 1, 1982; Pub. Act 84—976, eff. Jan. 1, 1986 (which, among other things, made HMOs subject to provisions of the Insurance Code); Pub. Act 85—20, eff. July 20, 1987), placing some of the same restrictions that were once unique to VHSPA corporations, upon HMOs. The "persona" of the voluntary health services plans began to dissipate, and the distinction between a health services plan and an HMO became less apparent.

Anchor is a prime example. It came into being in 1971 as a health services agreement between Presbyterian-St. Luke's (now Rush-Presbyterian) Medical Center and the union representing the center's employees. However, by 1977, it had become certified as an HMO under State and Federal law. (Ill. Rev. Stat. 1977, ch. 111½, par. 1401 *et seq.*; 42 U.S.C. §300e *et seq.* (1988).) By 1985, it had successfully marketed its program to other employer groups, so that Rush-Presbyterian employees represented only a small fraction of its subscribers. See *Moshe*, 199 Ill. App. 3d at 590.

It appears to this court that, sometime after 1986, Anchor's duties, obligations and requirements under the VHSPA merged with its duties, obligations and requirements as a State-certified and federally qualified HMO. We find that, under these circumstances, it would be fundamentally unfair and an unconstitutional unequal treatment to allow Anchor to rely upon its VHSPA charter to be insulated from liability. Consequently, we find that, at the time that this cause of action accrued in 1986, Anchor was acting in the same capacity as any other HMO and that despite its charter under the VHSPA, it was not eligible to take advantage of the immunity that the status allowed.

Because we find that the immunity provision in section 26 of the VHSPA was not available to Anchor because its application to Anchor would be unconstitutional, we find it unnecessary to address the plain-

tiffs' remaining issue, that Anchor was not entitled to the immunity provided by section 26 because of alleged violations of the VHSPA.

For the reasons stated above, we reverse the trial court's dismissal of Anchor from the cause of action and remand for further proceedings consistent with this opinion.

Reversed and remanded.

LORENZ, P.J., and GORDON, J., concur.