666 N.E.2d 888 (1996)
281 Ill. App.3d 189
217 Ill.Dec. 219
In re C.T., a Minor (Dana L. Corman, Guardianship Adm'r of the Department of Children and Family Services, Petitioner-Appellant,
v.
C.T., Respondent-Appellee).
No. 2-95-1152.
Appellate Court of Illinois, Second District.
June 7, 1996.
James E. Ryan, Attorney General, Brian F. Barov, Assistant Attorney General, Chicago, for Dana L. Corman Guardianship Administrator, DCFS.
Anthony M. Peccarelli, DuPage County State's Attorney, Gary C. Duerkoop, Assistant State's Attorney, Wheaton, William L. Browers Deputy Director, State's Attorney Appellate Prosecutor, Elgin, for People Of The State Of Illinois.
*889 Stephen W. Baker, Public Defender DuPage County, Lisa A. Berman, Senior Assistant Public Defender, Wheaton, for C.T.
Justice GEIGER delivered the opinion of the court:
The petitioner, Dana L. Corman, Guardianship Administrator of the Department of Children and Family Services (DCFS), appeals from the order of the circuit court of Du Page County appointing DCFS the guardian of the minor, C.T., following his adjudication as a neglected and dependent minor under sections 2-3(1)(a) and 2-4(1)(a) of the Juvenile Court Act of 1987 (the Juvenile Court Act) (705 ILCS Ann. 405/2-3(1)(a), 2-4(1)(a) (Smith-Hurd Supp.1996)). In addition, DCFS appeals the circuit court's order, entered on a second dependency petition, placing the minor in temporary shelter care with DCFS pursuant to section 2-10 of the Juvenile Court Act (705 ILCS Ann. 405/2-10 (Smith-Hurd Supp.1996)). At issue on appeal is whether the recent amendments to the Juvenile Court Act (705 ILCS Ann. 405/2-10(2), 2-27(1)(d) (Smith-Hurd Supp. 1996)) and the Children and Family Services Act (20 ILCS Ann. 505/5(l) (Smith-Hurd Supp.1996)) preclude a court from placing a dependent minor aged 13 or over in the custody of DCFS if that minor has ever been adjudicated delinquent under article V of the Juvenile Court Act (705 ILCS 405/5-1 et seq. (West 1994)). We reverse and remand.
The minor was born on April 12, 1978. He was adjudicated delinquent on June 8, 1993, on four separate delinquency petitions. Following his admission to one count of criminal damage to property, nine counts of theft, and four counts of burglary, as set forth in the 1993 petitions, the minor was sentenced to three years' probation. In addition, on the recommendation of the Du Page County probation department, the court ordered the minor committed to the Department of Corrections (DOC). His commitment to the DOC was stayed, however, due to his placement in a residential treatment program. On May 24, 1994, the minor was unsuccessfully discharged from his residential placement and ultimately discharged to the custody of the DOC.
On September 8, 1994, the trial court extended the minor's probation to April 18, 1998, releasing him to the custody of his maternal uncle. The court further ordered DCFS to provide, and the minor to cooperate with, substance abuse treatment and counseling. The court also set a status date for a check on service of the minor's parents by publication as to a fifth petition, filed on June 8, 1994, which sought to have the minor adjudicated neglected or dependent pursuant to sections 2-3(1)(a) and 2-4(1)(a) of the Juvenile Court Act. Subsequent orders continued the case for a dispositional hearing on the neglect or dependency petition.
A second dependency petition was filed on August 1, 1995. On August 9, 1995, following a hearing, the court entered orders on both the 1994 neglect or dependency petition and the 1995 dependency petition. In an order entitled "Dispositional Order," the court adjudicated the minor both neglected and dependent on the 1994 petition and appointed DCFS as guardian. In addition, in an order entitled "Order for Temporary Shelter Care," the court found probable cause to believe that C.T. was a dependent minor under section 2-4 of the Juvenile Court Act, and that it was a matter of immediate and urgent necessity that the minor be placed in shelter care for his own protection. Accordingly, the court placed the minor in the temporary custody of DCFS on the 1995 petition as well. This appeal followed.
The amendments at issue on appeal, all of which arose out of the same legislation, relate both to the Children and Family Services Act and the Juvenile Court Act. See Pub. Act 89-21, art. 5, § 5-15, eff. June 6, 1995 (amending 20 ILCS 505/5 (West 1994)); Pub. Act 89-21, art. 15, § 15-15, eff. July 1, 1995 (amending 705 ILCS 405/2-10, 2-27 (West 1994)). Section 5(k) of the Children and Family Services Act, which sets forth the direct child welfare services to be provided by DCFS, provides that DCFS "shall accept for care and training any child who has been adjudicated neglected or abused, or dependent committed to it pursuant to the Juvenile Court Act or the Juvenile Court Act of 1987." 20 ILCS Ann. 505/5(k) (Smith-Hurd Supp. 1996). Under the newly-amended section *890 5(l), however, "[a] minor charged with a criminal offense under the Criminal Code of 1961 [(720 ILCS 5/1-1 et seq. (West 1994))] or adjudicated delinquent shall not be placed in the custody of or committed to [DCFS] by any court, except a minor less than 13 years of age committed to [DCFS] under Section 5-23 of the Juvenile Court Act of 1987." 20 ILCS Ann. 505/5(l) (Smith-Hurd Supp.1996).
The portions of article II of the Juvenile Court Act relating to the temporary and final commitment of abused, neglected, or dependent minors were also amended to include similar language. For example, section 2-10(2) of the Juvenile Court Act, which applies to temporary custody hearings, now provides, in pertinent part:
"If the court finds that there is probable cause to believe that the minor is abused, neglected or dependent, the court shall state in writing the factual basis supporting its finding and the minor, his or her parent, guardian, custodian and other persons able to give relevant testimony shall be examined before the court. * * * If it is in the best interests of the minor, the court may also prescribe shelter care and order that the minor be kept in a suitable place designated by the court or in a shelter care facility designated by [DCFS] or a licensed child welfare agency; however, a minor charged with a criminal offense under the Criminal Code of 1961 or adjudicated delinquent shall not be placed in the custody of or committed to [DCFS] by any court, except a minor less than 13 years of age and committed to [DCFS] under Section 5-23 of this Act." (Emphasis added.)
705 ILCS Ann. 405/2-10(2) (Smith-Hurd Supp.1996). Likewise, section 2-27 of the Juvenile Court Act, which sets forth the trial court's options for the placement of an abused, neglected, or dependent minor, provides, in pertinent part:
"§ 2-27. Placement; legal custody or guardianship.
(1) If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that it is in the best interest of the minor to take him from the custody of his parents, guardian or custodian, the court may at this hearing and at any later point:
* * * * * *
(d) commit him to [DCFS] for care and service; however, a minor charged with a criminal offense under the Criminal Code of 1961 or adjudicated delinquent shall not be placed in the custody of or committed to [DCFS] by any court, except a minor less than 13 years of age and committed to [DCFS] under Section 5-23 of this Act." (Emphasis added.) 705 ILCS Ann. 405/2-27(1)(d) (Smith-Hurd Supp.1996).
On appeal, DCFS argues that the court's action in committing the minor, then 17 years old and previously adjudicated delinquent, to its custody in the context of a dependency petition violated the amended language of both the Juvenile Court Act and the Children and Family Services Act, exceeding the authority of the judicial branch and infringing upon the province of the legislature. DCFS' position, echoed in its "Policy Guide 95.5," is that, absent an independent basis for committing a minor to DCFS under circumstances unrelated to his delinquency or the crime with which he was charged, juvenile courts lack the authority to place with DCFS, and DCFS lacks the authority to accept, any minor 13 years of age or older charged with a crime or adjudicated delinquent. Thus, DCFS contends that where, as here, the basis for the finding of dependencythe refusal of the minor's parents to take custody of himis related to the minor's delinquent behavior, no "independent basis" exists to allow his commitment to DCFS.
In response, both the State and amicus curiae Patrick T. Murphy, Cook County public guardian, maintain that the placement prohibition on delinquent minors should be read to apply solely to delinquency proceedings under article V of the Juvenile Court Act, not to article II abuse, neglect, or dependency *891 proceedings. Although the State and the public guardian concede that the amendatory language at issue is found both in article II and article V (see 705 ILCS Ann. 405/2-10, 2-27, 5-23 (Smith-Hurd Supp. 1996)), they argue that the legislature intended only to restrict the ability of courts hearing delinquency matters to place children 13 years and older with DCFS. Under this interpretation, therefore, C.T.'s placement with DCFS was entirely proper, as it arose out of his adjudication as a neglected and dependent minor.
We find the position of the State and the public guardian to be untenable in light of the plain language of the statutes in question. In construing a legislative enactment, the primary rule of construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989, 167 Ill.2d 161, 168, 212 Ill.Dec. 215, 656 N.E.2d 1049 (1995). The best indicator of legislative intent, moreover, is the language of the statute itself. See Bogseth v. Emanuel, 166 Ill.2d 507, 513, 211 Ill.Dec. 505, 655 N.E.2d 888 (1995). If the language of the statute is clear, a court should give it effect and not look to extrinsic aids for construction. Bogseth, 166 Ill.2d at 513, 211 Ill.Dec. 505, 655 N.E.2d 888.
Here, the legislature could have achieved the result sought by the State and the public guardian by having amended article V of the Juvenile Court Act while leaving article II intact. Yet it did not. Indeed, the very inclusion of the amendatory language in sections 2-10 and 2-27 of the Juvenile Court Act could serve no purpose but to extend the prohibition against the placement with DCFS of minors aged 13 and over with a history of delinquency to abuse, neglect, and dependency proceedings. To accept the construction urged by the State and the public guardian would essentially read the amendments out of article II entirely, rendering the amendatory language a nullity. This we refuse to do. See People v. Singleton, 103 Ill.2d 339, 345, 82 Ill.Dec. 666, 469 N.E.2d 200 (1984) (statutes to be construed so as to avoid constructions that render language meaningless or superfluous).
Nor are we persuaded by the construction offered by DCFS. In order to alleviate the potentially harsh result of the amendments, DCFS has created an "independent basis" exception for delinquent minors who are subsequently adjudicated abused, neglected, or dependent for reasons unrelated to their delinquency. Under this view, DCFS would not accept the placement of a 15-year-old delinquent minor locked out of his home by his parents due to his delinquent behavior. If the minor's dependency arose due to the death of his parents, however, DCFS would accept him for placement notwithstanding his prior adjudication of delinquency because of the "independent basis" for the finding of dependency.
We find nothing in the language of the amendments to support such a construction. Neither section 2-10 nor section 2-27 makes any provision for the commitment of delinquent minors with an "independent basis" for their wardship; rather, each sets forth a clear prohibition on the commitment of such minors to the custody of DCFS, excepting only those minors less than 13 years of age who have been committed to DCFS under section 5-23 of the Juvenile Court Act. The operative inquiry in the case at bar, therefore, turns not on the basis for the finding of C.T.'s neglect and dependency, but solely on his prior adjudication of delinquency. Accordingly, we conclude, in light of the plain language of sections 2-10 and 2-27 of the Juvenile Court Act and the language of section 5 of the Children and Family Services Act, that C.T.'s commitment to the custody of DCFS was improper.
For his part, the minor argues that the amendments to the Juvenile Court Act and the Children and Family Services Act violate the equal protection clause of the United States Constitution (U.S. Const., amend. XIV) by denying access to DCFS' services to certain minors because of their delinquency. We note that the guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. People v. R.L., 158 Ill.2d 432, 437, 199 Ill. Dec. 680, 634 N.E.2d 733 (1994). Although *892 the clause does not preclude the State from enacting legislation which draws distinctions between different categories of people, it does prohibit the government from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation. Nevitt v. Langfelder, 157 Ill.2d 116, 124, 191 Ill.Dec. 36, 623 N.E.2d 281 (1993).
In considering an equal protection claim, we must employ a two-step analysis to determine whether a legislative classification deprives an individual of the equal protection of the laws. People v. Adams, 198 Ill.App.3d 74, 84, 144 Ill.Dec. 402, 555 N.E.2d 761 (1990). First, we must determine whether the statute in question affects a fundamental right or discriminates against a suspect class. Adams, 198 Ill.App.3d at 84, 144 Ill.Dec. 402, 555 N.E.2d 761. If so, we will apply strict scrutiny and uphold the statute only if it is narrowly tailored to serve a compelling state interest. Adams, 198 Ill.App.3d at 84, 144 Ill.Dec. 402, 555 N.E.2d 761; People v. Shephard, 152 Ill.2d 489, 500, 178 Ill.Dec. 724, 605 N.E.2d 518 (1992). If the challenged statute does not implicate a fundamental right or discriminate against a suspect class, we turn to the second prong of the equal protection analysis and apply the rational basis test. Adams, 198 Ill.App.3d at 84, 144 Ill.Dec. 402, 555 N.E.2d 761. Economic and social welfare legislation not affecting a suspect class or fundamental right is subject to such rational basis review. See American National Bank & Trust Co. v. Anchor Organization for Health Maintenance, 210 Ill. App.3d 418, 425, 155 Ill.Dec. 128, 569 N.E.2d 128 (1991).
Our supreme court has rejected the notion that juveniles constitute a suspect class. People v. M.A., 124 Ill.2d 135, 140, 124 Ill.Dec. 511, 529 N.E.2d 492 (1988). Even so, the minor contends that the amendments to the Juvenile Court Act and Children and Family Services Act should nonetheless be subjected to strict scrutiny, reasoning that "[a] legal matter which affects children axiomatically affects the family relationship, which invokes a fundamental liberty interest." Although we acknowledge that the interest of parents in the care and custody of their child is fundamental (see People v. R.G., 131 Ill.2d 328, 342-44, 137 Ill.Dec. 588, 546 N.E.2d 533 (1989)), such is not the interest triggered by the amendments in the case at bar. The statutes at issue do not affect the termination of custodial rights; instead, they seek to limit the availability of DCFS services to minors with a history of delinquency. Any fundamental right affected, therefore, would be the heretofore-unrecognized right of a minor to be placed with DCFS.
We turn, then, to an examination of whether a rational basis exists for classifying minors based on their delinquency. As the supreme court has recognized, a court's review of a legislative classification under the rational basis test is limited and generally deferential. Shephard, 152 Ill.2d at 502, 178 Ill.Dec. 724, 605 N.E.2d 518. The court simply inquires whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal. Fumarolo v. Chicago Board of Education, 142 Ill.2d 54, 74, 153 Ill.Dec. 177, 566 N.E.2d 1283 (1990). The legislation carries with it a strong presumption of constitutionality (People v. Blackorby, 146 Ill.2d 307, 318, 166 Ill.Dec. 902, 586 N.E.2d 1231 (1992)), and, if any set of facts can reasonably be conceived to justify the classification, it must be upheld (Shephard, 152 Ill.2d at 502, 178 Ill.Dec. 724, 605 N.E.2d 518).
The stated purpose of the Juvenile Court Act, as set forth in section 1-2(1), is:
"[T]o secure for each minor subject [t]hereto such care and guidance, preferably in his or her own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community; to preserve and strengthen the minor's family ties whenever possible, removing him or her from the custody of his or her parents only when his or her welfare or safety or the protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his or her own family, to secure for him or her custody, care and discipline as nearly as possible *893 equivalent to that which should be given by his or her parents, and in cases where it should and can properly be done to place the minor in a family home so that he or she may become a member of the family by legal adoption or otherwise." 705 ILCS 405/1-2(1) (West 1994).
Although the amendments at issue here foreclose the option of placing delinquent minors aged 13 and older with DCFS, they do not, as claimed by the minor, "frustrate the unmistakable purpose of the Juvenile Court Act." Courts faced with abused, neglected, or dependent minors with a history of delinquency retain the options of (a) placing the minor in the custody of a suitable relative or other person as legal custodian or guardian; (b) placing the minor under the guardianship of a probation officer; or (c) committing the minor to an agency for care or placement, except an institution under the authority of DOC or DCFS. See 705 ILCS Ann. 405/2-27 (Smith-Hurd Supp.1996). In limiting the placement of delinquent minors with DCFS, the legislature could, within its broad discretion, have sought to restrict the allocation of DCFS' scarce resources to its core population of abused, neglected, or dependent minors with no history of delinquency. Further, the legislature reasonably could have concluded that delinquent minors aged 13 and older might present a danger to younger, more vulnerable children with whom they might be placed in foster homes and shelter care facilities. It is not for us to evaluate whether the course chosen by the General Assembly here to achieve the desired result was either wise or the best means available; we need only determine whether a reasonable basis exists for the classification and whether it bears a reasonable and proper relation to the purposes of the statute. See Garcia v. Tully, 72 Ill.2d 1, 10, 17 Ill.Dec. 820, 377 N.E.2d 10 (1978). Because we cannot say that the amendments' classification based on the minor's prior delinquency is without a rational relationship to the stated purpose of the Juvenile Court Act, we reject the minor's equal protection challenge.
For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand for further proceedings consistent with this opinion.
Reversed and remanded.
BOWMAN and THOMAS, JJ., concur.