*In re* C.M., a Minor (Dana L. Corman, Guardian Adm'r of the Department of Children and Family Services, Petitioner-Appellant ).—*In re* J.E.B., a Minor (Dana L. Corman, Guardian Adm'r of the Department of Children and Family Services, Petitioner-Appellant).

Third District   Nos. 3—95—0651, 3—95—0694 cons.

Opinion filed August 14, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Brian F. Barov (argued), Assistant Attorney General, of counsel), for appellant.

Michael Kick, State's Attorney, of Kankakee, and James Glasgow, State's Attorney, of Joliet (John X. Breslin and Judith Z. Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellee J.E.B.

Dennis J. Boran, of Peterson, Deck, Ruch & Boran, of Kankakee, guardian *ad litem*.

JUSTICE LYTTON delivered the opinion of the court:

Public Act 89—21 (Pub. Act 89—21, eff. July 1, 1995) amended the Juvenile Court Act, limiting the ability of courts to name the Department of Children and Family Services (DCFS) custodian for certain minors. Finding that these changes did not apply, the trial courts in these consolidated cases awarded DCFS temporary custody of two minors who had been adjudicated abused, neglected or dependent. We reverse and remand for further proceedings.

## I. FACTS

### A. *In re* C.M.

C.M. was born on March 14, 1979. On January 12, 1993, his father filed a petition to have him declared a neglected minor after he sexually abused his sister and stepsister while residing with his mother. The petition was later dismissed. C.M. was subsequently charged in a juvenile petition with criminal sexual abuse and aggravated criminal sexual abuse. On July 19, 1993, the trial court found C.M. to be delinquent, placed him on two years' probation and ordered him to live with his father.

A juvenile petition for theft was filed against C.M., and a month later, he was placed in the temporary custody of a juvenile detention facility. At the adjudicatory hearing, the court found C.M. delinquent on the theft charge. After the dispositional hearing, he was transferred to the Department of Corrections (DOC). When he was released from the DOC on June 29, 1995, his parents refused custody, and C.M. voluntarily went to Aunt Martha's Youth Service Center, a social service agency.

The Kankakee County State's Attorney filed a temporary custody petition on the grounds that C.M. was an abused, neglected or dependent minor pursuant to sections 2—3 and 2—4 of the Juvenile Court

Act of 1987 (Act) (705 ILCS 405/2—3, 2—4 (West 1994)). Evidence at the temporary custody hearing showed that C.M.'s parents refused custody due to his criminal behavior. DCFS argued that it was barred from taking custody of C.M. pursuant to Public Act 89—21.

The trial court appointed DCFS temporary guardian, ruling that Public Act 89—21 barred commitment of juveniles to DCFS only in pending delinquency petitions, not in neglect petitions. DCFS filed a petition for leave to appeal pursuant to Supreme Court Rule 306(a)(5) (155 Ill. 2d R. 306(a)(5)). In November 1995, this court granted DCFS's petition for leave to appeal.

## B. *In re* J.E.B.

J.E.B. was born on February 4, 1982, and lived with his mother and two brothers in Utah, where he was physically and sexually abused by his older brother. In February 1995, J.E.B. went to live in Council Bluffs, Iowa, with his father, his father's girlfriend and her two sons, ages six and eight. They subsequently moved to Joliet, Illinois, where on May 25, 1995, J.E.B. was charged with two counts of criminal sexual assault against the girlfriend's sons. J.E.B. was placed in a juvenile detention facility and was adjudicated delinquent on two counts of aggravated criminal sexual abuse on July 12, 1995.

J.E.B.'s father, his girlfriend and her two sons moved back to Iowa on July 25, 1995; the father agreed to take custody of J.E.B. after the boy received residential treatment. On August 2, 1995, the Will County State's Attorney filed a temporary custody petition on the grounds that J.E.B. was a neglected or dependent minor pursuant to sections 2—3 and 2—4 of the Act. At a custody hearing held on August 25, 1995, the trial court vacated the prior delinquency orders, found J.E.B. neglected or dependent and awarded temporary custody to DCFS.

On August 28, 1995, the trial court adjudicated J.E.B. delinquent. On September 28, 1995, the court sentenced him to five years' probation, affirmed its prior custody award and found Public Act 89—21 to be unconstitutional.

DCFS filed a petition for leave to appeal from the trial court's August 25 order and a petition for leave to consolidate the appeals involving C.M. and J.E.B. On November 9, 1995, this court granted the petition for leave to appeal; the two appeals were consolidated on November 29, 1995.

## II. Public Act 89—21

Public Act 89—21 amends sections 2—10, 2—27, 5—10 and 5—23 of the Act (705 ILCS 405/2—10, 2—27, 5—10, 5—23 (West Supp. 1995)); article II relates to the care and custody of abused, ne-

glected or dependent minors, while article V concerns minors who have been adjudicated delinquent. The changes in article II are primarily at issue in this consolidated appeal. As amended, article II states:

> "[A] minor charged with a criminal offense under the Criminal Code of 1961 or adjudicated delinquent shall not be placed in the custody of or committed to [DCFS] by any court, except a minor less than 13 years of age and committed to [DCFS] under Section 5—23 of this Act." 705 ILCS 405/2—10(2), 2—27(1)(d) (West Supp. 1995).

Similar changes have been made to section 5(1) of the Children and Family Services Act (Child Services Act), which outlines DCFS's duty to provide direct child welfare services (20 ILCS 505/5(1) (West Supp. 1995)). Three issues have been raised on appeal concerning the validity of Public Act 89—21.

## A. Circuit Court's Statutory Authority

■ We first address the contention that Public Act 89—21 is invalid because it restricts trial courts' authority to name custodians in accordance with the best interests of the affected minors. See 705 ILCS 405/1—2(1) (West 1994).

The Act delineates the authority of the circuit courts, and the "best interests of the child" standard must operate within these limits. See *In re M.M.*, 156 Ill. 2d 53, 66-67, 619 N.E.2d 702, 710 (1993). Having initially granted courts the authority to make custody determinations under the Act, the legislature may revise this power as it sees fit. See *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 165, 538 N.E.2d 524, 529 (1989).

In Public Act 89—21, the legislature chose to alter the circuit courts' ability to place certain minors with DCFS. The amendment did not change the applicability of the "best interests" standard; it simply modified the contours of the courts' authority in determining what the best interests of the child are. In its discretion, the legislature can redefine the scope of circuit courts' alternatives under the Act so long as it does not act unconstitutionally. See *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 62-63, 566 N.E.2d 1283, 1286 (1990).

## B. Equal Protection

■ We next consider whether Public Act 89—21 is an unconstitutional violation of the affected minors' equal protection rights. Under the equal protection clause, the State may not treat similarly situated persons differently for reasons that are unrelated to the legisla-

tive purpose of the statute. *People v. R.L.*, 158 Ill. 2d 432, 437, 634 N.E.2d 733, 736 (1994).

The second district recently analyzed a similar argument in *In re C.T.*, 281 Ill. App. 3d 189, 195 (1996). The court first considered whether the amendments affected a fundamental right or a suspect class. Acknowledging parents' fundamental interest in the care and custody of their child, the court rejected the argument that Public Act 89—21 affects this interest. "Any fundamental rights affected, therefore, would be the heretofore-unrecognized right of a minor to be placed with DCFS." 281 Ill. App. 3d at 196. In addition, in *People v. M.A.*, 124 Ill. 2d 135, 140, 529 N.E.2d 492, 494 (1988), our supreme court refused to consider juveniles a suspect class. Thus, no fundamental right is implicated in this case.

Because the amendments in Public Act 89—21 did not involve a fundamental right or a suspect class, the court in *C.T.* applied a rational basis test. Rational basis scrutiny is generally deferential, requiring only a determination of whether the statutory means are rationally related to the stated legislative goal. Legislation will be upheld if its classification scheme can be justified under any conceivable set of facts. *C.T.*, 281 Ill. App. 3d at 195-96.

After reviewing the objective of the Act, the court in *C.T.* found that the amendments do not frustrate the Act's protective purpose. Courts may still place affected minors in the custody of suitable relatives or unrelated persons, under the guardianship of a probation officer or in the care of an agency that is not governed by the DOC or DCFS. *C.T.*, 281 Ill. App. 3d at 196. The court noted that the amendments may in fact advance the purpose of the Act by focusing DCFS's limited resources on its core population of abused, neglected or dependent minors who have not been adjudicated delinquent. The changes also may have been intended to protect younger or more vulnerable children from the potential dangers presented by delinquent teenagers housed in the same facilities. Both of these considerations represent legitimate state concerns.

Because the classification scheme was based on reasonable state goals and was rationally related to the purpose of the Act, the court in *C.T.* refused to override the legislature's discretion by finding the amendments unconstitutional. *C.T.*, 281 Ill. App. 3d at 196-97. Applying the same reasoning to the instant case, we reject the equal protection challenge to Public Act 89—21.

### C. Statutory Construction

■ We next address the argument that the legislature did not intend Public Act 89—21 to alter DCFS's mandate under section 5(k)

of the Child Services Act to "accept for care and training any child who has been adjudicated neglected or abused, or dependent committed to it pursuant to the Juvenile Court Act." 20 ILCS 505/5(k) (West Supp. 1995). It is asserted that the amendments to article II apply only to proceedings in which a minor is adjudicated delinquent or is charged with a criminal offense, but not to neglect proceedings, because the amendments specifically refer to section 5—23 of the Act, which concerns the custody of delinquent minors. See 705 ILCS 405/5—23(3) (West 1994). We are not persuaded by this argument.

Our primary goal in statutory construction is to give effect to the intent of the legislature. In determining legislative intent, we must construe the language of a statute according to its plain and ordinary meaning. *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527, 531-32, 634 N.E.2d 1093, 1096 (1994).

In the instant case, Public Act 89—21 added similar amendments to article II and article V of the Act. The legislature was not obliged to alter both articles, yet chose to do so. To judicially excise this language from article II would effectively nullify the discretionary judgment of the legislature. Such a result cannot be justified where a clear legislative intent is unambiguously expressed by the plain language of the amendments. See *C.T.*, 281 Ill. App. 3d at 193-94; *Danner v. Norfolk & Western Ry. Co.*, 271 Ill. App. 3d 598, 603, 648 N.E.2d 603, 606 (1995).

For the same reason, we reject DCFS's contention that Public Act 89—21 allows juvenile courts to place affected minors with the Department if an "independent basis" exists for the custody petition, *i.e.*, one unrelated to the minor's delinquency or criminal charges. See *C.T.*, 281 Ill. App. 3d at 194. The unambiguous language of amended sections 2—10 and 2—27 does not allow DCFS to take custody of a delinquent minor over the age of 12 if an "independent basis" exists for a subsequent finding of neglect, abuse or dependency.

■ Trial courts may not exceed the authority granted to them by the Act " 'no matter how desirable or beneficial' " the result. *In re P.F.*, 265 Ill. App. 3d 1092, 1104, 638 N.E.2d 716, 725 (1994), quoting *In re Peak*, 59 Ill. App. 3d 548, 551-52, 375 N.E.2d 862, 865 (1978). Similarly, DCFS's custodial power is limited by the Child Services Act. 20 ILCS 505/1 *et seq.* (West 1994); see *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 171, 613 N.E.2d 719, 729 (1993) (enabling statute limits power of an administrative agency). The trial court orders awarding temporary custody of C.M. and J.E.B. to DCFS improperly exceeded these statutory limitations.

## III. Conclusion

The judgments of the circuit courts of Kankakee County and Will County are reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HOLDRIDGE, P.J., and McCUSKEY, J., concur.