690 N.E.2d 980 (1998)
181 Ill.2d 32
228 Ill.Dec. 905
In re A.A., a Minor (The Department of Children and Family Services, Appellant,
v.
The People of the State of Illinois, Appellee).
Nos. 81711, 81800.
Supreme Court of Illinois.
January 23, 1998.
Jim Ryan, Attorney General, Civil Appeals Div., Susan Frederick Rhodes, Assistant Attorney General, Chicago, for Illinois Department of Children and Family Service in Nos. 81711 and 81800.
Marshall M. Stevens, State Attorney Appellate Prosecutor, Elgin, for A.A. and the People in No. 81711.
Justice NICKELS delivered the opinion of the court:
These consolidated appeals concern the constitutionality of legislation preventing minors *981 13 years of age or older who have been charged with a criminal offense or adjudicated delinquent from being committed to or placed in the custody of the Department of Children and Family Services (DCFS). The two appeals arise from orders in separate proceedings in the circuit court of St. Clair County, both concerning custody of the same minor, A.A. In Docket No. 81711, DCFS appeals from an order of the trial court declaring sections 2-10 and 2-27 of the Juvenile Court Act of 1987 (705 ILCS 405/2-10, 2-27 (West 1994)) unconstitutional under the equal protection clauses of the Illinois and United States Constitutions, and placing A.A. in the custody of DCFS. Since the trial court declared a portion of a statute of this state unconstitutional, we have jurisdiction to hear DCFS's direct appeal to this court pursuant to Supreme Court Rule 302(a) (134 Ill.2d R. 302(a)). In Docket No. 81800, DCFS filed a petition under Supreme Court Rule 306(a)(5) (166 Ill.2d R. 306(a)(5)) for leave to appeal to the appellate court from an interlocutory order entered by the circuit court awarding temporary custody of A.A. to DCFS. The appellate court allowed the petition. Thereafter, DCFS filed a motion to transfer the appeal to this court under Supreme Court Rule 302(b) (134 Ill.2d R. 302(b)) and to consolidate the appeal with No. 81711. We allowed the motion.
For the reasons set forth below, we reverse the orders of the circuit court and remand the causes for further proceedings.

BACKGROUND
A.A. was born in September 1980, and has a significant history of behavioral problems. At some point in time, A.A.'s older sister was appointed as his legal guardian under the Probate Act of 1975 (755 ILCS 5/1-1 et seq. (West 1994)). However, due to A.A.'s unmanageable behavior, his sister filed a petition in the circuit court of St. Clair County to terminate her guardianship. The trial court granted the petition and ordered that A.A. be placed in the temporary custody of DCFS. The court further ordered the office of the State's Attorney of St. Clair County to "file appropriate pleadings to place custody and guardianship of [A.A.] with [DCFS]." On March 27, 1996, the State filed a petition under the Juvenile Court Act to adjudicate A.A. a neglected minor on the basis that his mother "refuses to provide [A.A.] with proper or necessary support, education or medical or re-medial [sic] care necessary for [A.A.'s] well-being and has abandoned [A.A.] in that she refuses to allow the minor to live with her and she refuses to provide support of any kind." The petition requested that DCFS's guardianship administrator be appointed guardian of the person of A.A. At a hearing on April 15, 1996, A.A.'s mother admitted the allegations of neglect and, on the same day, an order was entered finding A.A. to be neglected, making him a ward of the court, appointing DCFS's guardianship administrator as A.A.'s guardian, and placing A.A. in the custody of DCFS.
DCFS subsequently moved to intervene in both the probate proceedings and the neglect proceedings under the Juvenile Court Act. DCFS sought reconsideration of the custody orders entered in both proceedings, arguing that because A.A. was over the age of 13 and had previously been adjudicated delinquent, he was statutorily ineligible for placement in the custody of DCFS under recent amendments to the Juvenile Court Act (see Pub. Act 89-21, art. 15, § 15-15, eff. July 1, 1995 (amending 705 ILCS 405/2-10, 2-27 (West 1994))) and the Children and Family Services Act (see Pub. Act 89-21, art. 5, § 5-15, eff. June 6, 1995 (amending 20 ILCS 505/5(l) (West 1994))). The record reflects that in 1995, A.A. was adjudicated delinquent based on charges of burglary and residential burglary. The State responded that the amendments to the Juvenile Court Act and the Children and Family Services Act violated the equal protection clauses of the state and federal constitutions. The trial court in the neglect proceedings under the Juvenile Court Act agreed. The court concluded that there was no rational basis for preventing the class of minors 13 years of age or older charged with an offense or adjudicated delinquent from receiving custodial care by DCFS. These appeals followed.

ANALYSIS
At the outset, we note that at the time of the trial court's decision, the constitutionality of the provisions at issue had *982 already been upheld against an equal protection challenge by the Appellate Court, Second District, in In re C.T., 281 Ill. App.3d 189, 217 Ill.Dec. 219, 666 N.E.2d 888 (1996). The record reflects that the trial court was apprised of the decision in C.T., but the trial court inexplicably failed to follow it. It is the absolute duty of the circuit court to follow the decisions of the appellate court. See generally State Farm Fire & Casualty Co. v. Yapejian, 152 Ill.2d 533, 539-40, 178 Ill.Dec. 745, 605 N.E.2d 539 (1992).
We turn now to the merits of the equal protection question raised in these appeals. The analysis applied by this court in assessing equal protection claims is the same under both the United States and the Illinois Constitutions. Jacobson v. Department of Public Aid, 171 Ill.2d 314, 322, 216 Ill.Dec. 96, 664 N.E.2d 1024 (1996). The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. Jacobson, 171 Ill.2d at 322, 216 Ill.Dec. 96, 664 N.E.2d 1024. While the government may not accord different treatment to persons who have been placed by statute into different classes on the basis of criteria wholly unrelated to the purpose of legislation, the equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people. See Jacobson, 171 Ill.2d at 322, 216 Ill.Dec. 96, 664 N.E.2d 1024. The level of scrutiny applied in reviewing legislative classifications under the equal protection guarantee depends on the nature of the classification: those based on race or national origin, or affecting fundamental rights, receive a heightened level of review under the strict scrutiny standard, whereas economic and social welfare legislation is reviewed under the highly deferential rational basis test. Jacobson, 171 Ill.2d at 322-23, 216 Ill.Dec. 96, 664 N.E.2d 1024.
Mindful of these principles, we examine the statutory provisions at issue in the present case. Section 2-27 of the Juvenile Court Act provides, in pertinent part:
"(1) If the court determines * * * [that] the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that it is in the best interest of the minor to take him from the custody of his parents, guardian or custodian, the court may * * *:
(a) place him in the custody of a suitable relative or other person as legal custodian or guardian;
(b) place him under the guardianship of a probation officer;
(c) commit him to an agency for care or placement, except an institution under the authority of the Department of Corrections or of [DCFS];
(d) commit him to [DCFS] for care and service; however, a minor charged with a criminal offense under the Criminal Code of 1961 or adjudicated delinquent shall not be placed in the custody of or committed to [DCFS] by any court, except a minor less than 13 years of age and committed to [DCFS] under Section 5-23 of this Act." (Emphasis added.) 705 ILCS 405/2-27 (West 1996).
Section 2-10 of the Juvenile Court Act, which pertains to temporary custody orders in abuse, neglect and dependency proceedings, contains language identical to the emphasized language quoted above from section 2-27(d). However, during the pendency of this appeal, section 2-10 was amended to permit such delinquent teenagers, or those charged with an offense, to be committed to DCFS or placed in its custody if "an independent basis of abuse, neglect, or dependency exists, which must be defined by departmental rule." See Pub. Act 89-582, § 5, eff. January 1, 1997 (amending 705 ILCS 405/2-10 (West 1994)).
The parties agree that since the challenged statutory provisions do not discriminate against members of a suspect class or affect any fundamental right, the rational basis test applies. Under the rational basis test, judicial review of legislative classifications is limited and generally deferential; the court simply inquires whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal. Jacobson, 171 Ill.2d at 323, 216 Ill.Dec. 96, 664 N.E.2d 1024. If any set of facts can reasonably be conceived *983 to justify the classification, it must be upheld. Jacobson, 171 Ill.2d at 324, 216 Ill. Dec. 96, 664 N.E.2d 1024. Whether a rational basis exists for a classification is a question of law, which we consider de novo.
As previously noted, our appellate court has rejected an equal protection challenge to the provisions at issue in this case. In In re C.T., 281 Ill.App.3d 189, 217 Ill.Dec. 219, 666 N.E.2d 888 (1996), it was argued that the challenged provisions frustrated the Juvenile Court Act's stated objective of securing "custody, care and discipline as nearly as possible equivalent to that which should be given by [the parents of minors subject to the Juvenile Court Act]." 705 ILCS 405/1-2(1) (West 1994). The appellate court in C.T. rejected the argument:
"Courts faced with abused, neglected, or dependent minors with a history of delinquency retain the options of (a) placing the minor in the custody of a suitable relative or other person as legal custodian or guardian; (b) placing the minor under the guardianship of a probation officer; or (c) committing the minor to an agency for care or placement, except an institution under the authority of [the Department of Corrections] or DCFS. [Citation.] In limiting the placement of delinquent minors with DCFS, the legislature could, within its broad discretion, have sought to restrict the allocation of DCFS' scarce resources to its core population of abused, neglected, or dependent minors with no history of delinquency. Further, the legislature reasonably could have concluded that delinquent minors aged 13 and older might present a danger to younger, more vulnerable children with whom they might be placed in foster homes and shelter care facilities." C.T., 281 Ill.App.3d at 196-97, 217 Ill.Dec. 219, 666 N.E.2d 888.
The Appellate Court, Third District, has followed C.T. in In re C.M., 282 Ill.App.3d 990, 218 Ill.Dec. 564, 669 N.E.2d 707 (1996).
We find the appellate court's reasoning in C.T. and C.M. to be sound and we are unpersuaded by the State's contrary arguments. The State first contends that the exclusion of delinquent teenagers from DCFS's custody cannot rationally have been based on legislative concern for the safety of other minors in DCFS's custody, as the C.T. court suggested. In support of this assertion, the State notes that because the legislature has now carved out an exception allowing delinquent teenagers to be placed in DCFS's temporary custody when there is an independent basis for finding abuse, neglect or dependency, DCFS's younger charges are potentially exposed to older delinquents. We disagree with the State's argument. The legislature could rationally distinguish between teenaged minors whose need for shelter care is directly related to their delinquency (for example, minors who have been ejected from their family homes because of delinquent behavior) and those whose delinquency is or was independent from the basis for finding abuse, neglect or dependency. The legislature could reasonably conclude that the former group poses a greater threat than the latter to young nondelinquent children in DCFS's temporary custody.
The State also argues that the alternative placement options for delinquent teenagers are not always realistic and there is no guarantee that a suitable custodian will necessarily be available. As noted by the appellate court in C.T., the Juvenile Court Act provides for placement with a suitable relative or other person, placement under the guardianship of a probation officer, or placement with an agency that is not under the authority of DCFS. In our view, the legislature could rationally conclude that these options were sufficient to provide for the needs of minors ineligible for placement with DCFS. We note that "`a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'" Cutinello v. Whitley, 161 Ill.2d 409, 421-22, 204 Ill.Dec. 136, 641 N.E.2d 360 (1994), quoting Federal Communications Comm'n v. Beach Communications, Inc., 508 U.S. 307, 315, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211, 222 (1993).
Finally, the State contends that provisions of the Juvenile Court Act providing for the confidentiality of juvenile court records and limiting the admissibility of juvenile court adjudications in other proceedings (see 705 ILCS 405/1-8, 1-10 (West 1994)) reflect a philosophy of minimizing the stigma attached to a delinquency adjudication. The State *984 argues that it is contrary to this philosophy to disqualify teenagers from custodial care by DCFS based on the status of having been adjudicated delinquent. We find the argument without merit. The confidentiality provisions cited protect the juvenile's privacy and help the juvenile make a fresh start in life. It does not logically follow, however, that a juvenile's delinquency status cannot be taken into account in determining how to provide for his or her needs after removal from the family.

CONCLUSION
Sections 2-10 and 2-27 of the Juvenile Court Act do not violate the equal protection clauses of our state and federal constitutions. Accordingly, the orders of the circuit court of St. Clair County are reversed and the causes are remanded for further proceedings consistent herewith and in accordance with the Juvenile Court Act.
Reversed and remanded.