(No. 78880.—Affirmed as modified.)

VINCENT JACOBSON *et al.*, Appellees, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Appellants.

*Opinion filed March 28, 1996.*

316

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Barbara L. Greenspan, Teresa Mooney Cullen and Danielle J. Steimel, Special Assistant Attorneys General, of Chicago, of counsel), for appellants.

Catherine Ritts and Bernard Shapiro, of Rockford, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

This appeal arises from a determination by the Department of Public Aid (the Department) that Vincent and Marilyn Jacobson were liable for the support of their 19-year-old daughter pursuant to section 10—2 of the Illinois Public Aid Code (305 ILCS 5/10—2 (West 1992)) and were therefore required to reimburse the Department for welfare payments it had made to her under the Aid to Families with Dependent Children (AFDC) program. On administrative review, the circuit

court of Winnebago County set aside the Department's decision. The appellate court affirmed the circuit court's judgment, holding that section 10—2 (305 ILCS 5/10—2 (West 1992)) violates equal protection as guaranteed by article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 2) and the fourteenth amendment to the Constitution of the United States (U.S. Const., amend. XIV) because there is no rational basis for its imposition of financial responsibility on parents of 18- to 20-year-old children where the children reside in the parents' home, as was the case here, while exempting from liability parents whose children reside elsewhere. 269 Ill. App. 3d 359. We granted the Department's petition for leave to appeal as a matter of right (134 Ill. 2d R. 317), and for the reasons that follow, we now affirm.

The facts are not in dispute. Vincent and Marilyn Jacobson have a daughter named Pamela who gave birth to a child while still a teenager. Pamela kept the baby, and she and the child both live with the Jacobsons in their home, along with Pamela's adult brother. The Jacobsons provide Pamela and her child with free lodging, food, and some clothing. In addition, they allow her the use of an automobile.

The family's financial resources are modest. During the period relevant here, the household's gross annual income fell to just over $21,000. To ease some of the family's burden, Pamela applied to the Department of Public Aid for AFDC benefits for herself and her child. That application was granted, and Pamela began receiving the benefits when she was 19 years old. Her first month's check was for $224, but the benefit amount was subsequently increased to $268 per month. Of these sums, half ($112 the first month and $134 thereafter) was attributable to Pamela and half to her child.

Shortly after the payments commenced, the Depart-

ment's administrative enforcement unit sent Mr. Jacobson a "Notification of Support Obligation" pursuant to section 10—4 of the Public Aid Code (305 ILCS 5/10—4 (West 1992)). The notice advised Jacobson that he was responsible for Pamela's support. The notice further stated that Jacobson was required to submit a copy of his most recent federal tax return so that the Department could determine the amount of support he was obligated to pay.

The basis for the Department's claim was section 10—2 of the Public Aid Code (305 ILCS 5/10—2 (West 1992)), which provides:

"[P]arents are severally liable for the support of any child under age 21, except that a parent is not liable for a child age 18 or over if such child is not living with the parent or parents ***. ***

In addition to the primary obligation of support imposed upon responsible relatives, such relatives, if individually or together in any combination they have sufficient income or other resources to support a needy person, in whole or in part, shall be liable for any financial aid extended under this Code to a person for whose support they are responsible ***."

Based on the information it received from Jacobson, the Department determined that he was financially able to contribute to Pamela's support. Pursuant to section 10—7 of the Public Aid Code (305 ILCS 5/10—7 (West 1992)), it directed him to pay $916 in back payments and $134 per month thereafter. Although nominally designated as support payments, the money was to be paid directly to the Department, not Pamela. Its purpose was to reimburse the Department for that portion of Pamela's AFDC benefits attributable to her. We note in this regard that Jacobson was not liable to reimburse the Department for any benefits paid on behalf of Pamela's child, and those benefits play no role in this dispute.

Jacobson petitioned for release from or modification

of the Department's support order (305 ILCS 5/10—12 (West 1992)) based on a change in the family's income and on the in-kind support he and his wife already provided to their daughter. With respect to the latter point, Jacobson contended that because his in-kind contributions to Pamela already exceeded the amount which the Department calculated he should pay, it would be inappropriate for the Department to compel him to make any additional payments.

Following a hearing on the petition, the Department determined that under its rules, Jacobson was not entitled to credit for the in-kind support he provided. The Department held, however, that Jacobson and his wife did not have to pay as much as they had originally been ordered. According to the Department's decision, the Jacobsons owed only $802 as reimbursement for previous AFDC payments made to Pamela and $115 per month thereafter. The basis for this reduction was that the Jacobsons' household income had declined.

The Jacobsons promptly filed a complaint for administrative review in the circuit court. 305 ILCS 5/10—14 (West 1992). Once again they contended that they should be given credit for the food, lodging, and other in-kind contributions they were providing for Pamela's support. In addition, they argued that the statutory scheme violated equal protection and was unenforceable because it required a welfare recipient's parents to reimburse the State where the recipient was over the age of 18 and under the age of 21 and lived at home, but imposed no corresponding obligation on the parents of 18- to 20-year-old welfare recipients who lived on their own.

The circuit court set aside the Department's decision, holding that the statutory scheme could survive constitutional challenge, but only if the Department's guidelines for determining a parent's ability to provide support to a child receiving AFDC benefits took into ac-

count the applicable provisions of sections 504 and 505 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/504, 505 (West 1992)). The circuit court reasoned that consideration of the relevant factors enumerated in the Marriage and Dissolution of Marriage Act would avoid disparity in the treatment of parents whose 18- through 20-year-old children lived with them. If those factors were not applied, however, the court believed that the Public Aid Code's support rules would deny those parents equal protection of the law.

Section 10—3 of the Public Aid Code (305 ILCS 5/10—3 (West 1992)) states that the Department may promulgate guidelines based on sections 504, 505 and 505.2 of the Marriage and Dissolution of Marriage Act (750 ILCS 5/504, 505, 505.2 (West 1992)) in addition to its basic standard for determining the ability of responsible relatives to provide support. Where such guidelines have been adopted, their application is mandatory with respect to determination of the ability of responsible relatives to provide support to applicants for or recipients of financial benefits, but merely discretionary with respect to treatment of the applicants and recipients themselves.

The Department has adopted guidelines based on the Marriage and Dissolution of Marriage Act (89 Ill. Adm. Code § 160.60(c) (1992)), but has opted to make them applicable only in so-called Title IV-D cases (89 Ill. Adm. Code § 103.20 (1992)). The Department did not treat this as a Title IV-D case. To avoid having to declare the statutory scheme constitutionally infirm, the circuit court nevertheless applied the Marriage and Dissolution of Marriage Act guidelines here. It concluded that if the guidelines were followed, the Jacobsons would be entitled to credit for their in-kind contributions, and because the contributions exceeded the Jacobsons' statu-

tory support obligations, the Jacobsons would have no further liability. Accordingly, the court set aside the Department's final administrative decision and held that the Jacobsons owed the Department nothing.

The appellate court affirmed, but for different reasons. It opined that there is no rational basis for the distinction drawn by section 10—2 of the Public Aid Code (305 ILCS 5/10—2 (West 1992)) between parents whose 18- through 20-year-old children reside with them and those whose children do not. In the court's view, the classification does nothing to advance the purposes of the Public Aid Code. Accordingly, the court found the classification to be invalid on the grounds that it violated equal protection as guaranteed by the Illinois and United States Constitutions. In addition, because the court did not believe that the invalid portion of the statute could be severed from the remainder, it declared section 10—2 (305 ILCS 5/10—2 (West 1992)) to be unconstitutional in its entirety, precluding the Department from seeking reimbursement from the Jacobsons. It is in this posture that the case is before us now.

The analysis applied by this court in assessing equal protection claims is the same under both the United States and Illinois Constitutions. *Nevitt v. Langfelder*, 157 Ill. 2d 116, 124 (1993). The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. *People v. R.L.*, 158 Ill. 2d 432, 437 (1994). It does not preclude the State from enacting legislation that draws distinctions between different categories of people, but it does prohibit the government from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation. *Nevitt*, 157 Ill. 2d at 124.

In reviewing a claim that a statute violates equal protection, the court applies different levels of scrutiny

depending on the nature of the statutory classification involved. Classifications based on race or national origin or affecting fundamental rights are strictly scrutinized. Intermediate scrutiny applies to discriminatory classifications based on sex or illegitimacy. In all other cases, the court employs only a rational basis review. *Clark v. Jeter*, 486 U.S. 456, 461, 100 L. Ed. 2d 465, 471, 108 S. Ct. 1910, 1914 (1988).

Economic and social welfare legislation not affecting a suspect class or fundamental right is subject to such a rational basis test. See *American National Bank & Trust Co. v. Anchor Organization for Health Maintenance*, 210 Ill. App. 3d 418, 425 (1991). The Jacobsons' brief includes an argument that section 10—2 of the Public Aid Code does affect a fundamental right and is therefore subject to heightened scrutiny. As the appellate court correctly recognized, however, such a contention cannot be sustained in light of the United States Supreme Court's decision in *Bowen v. Gilliard*, 483 U.S. 587, 601-03, 97 L. Ed. 2d 485, 501-02, 107 S. Ct. 3008, 3017-18 (1987), which rejected a similar argument in connection with a challenge to congressional amendments to the AFDC program. Accordingly, the question before us today is simply whether the distinction drawn by section 10—2 between parents whose 18- through 20-year-old children live with them and those whose children reside elsewhere satisfies the rational basis test.

Whether a rational basis exists for a classification presents a question of law, which we consider *de novo*. *Cutinello v. Whitley*, 161 Ill. 2d 409, 417 (1994). Under the rational basis test, a court's review of a legislative classification is limited and generally deferential. *People v. Shephard*, 152 Ill. 2d 489, 502 (1992). The court simply inquires whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal. *Fumarolo v.*

*Chicago Board of Education,* 142 Ill. 2d 54, 74 (1990). The legislation carries a strong presumption of constitutionality (*People v. Blackorby,* 146 Ill. 2d 307, 318 (1992)), and if any set of facts can reasonably be conceived to justify the classification, it must be upheld (*Shephard,* 152 Ill. 2d at 502).

The purpose of the Illinois Public Aid Code is to "assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this State." 305 ILCS 5/1—1 (West 1992). With respect to administration of the Code, the General Assembly has decreed that "[t]he maintenance and strengthening of the family unit shall be a principal consideration" and "[a]ll public aid policies shall be formulated and administered to achieve this end." 305 ILCS 5/1—1 (West 1992). At the same time, the General Assembly has expressly stated that it is the family unit that bears primary responsibility for providing support when one of its members is in need. According to section 10—1 of the Code (305 ILCS 5/10—1 (West 1992)),

> "It is the intent of this Code that the financial aid and social welfare services herein provided supplement rather than supplant the primary and continuing obligation of the family unit for self-support to the fullest extent permitted by the resources available to it."

In arguing that there is a rational relationship between these objectives and the distinction drawn by section 10—2 between parents of children aged 18 through 20 whose children reside with them and those whose children reside elsewhere, the Department relies heavily on *Brown v. Department of Public Aid,* 274 Ill. App. 3d 410 (1995), a recent appellate court decision which upheld the constitutionality of the statute. In *Brown,* the court reasoned that different treatment could be imposed on parents who allow their children aged 18 through 20 to live with them because the legislature could reasonably find that such parents demonstrate a greater ability to provide financial assistance to their children and,

"[w]here parents have the ability to and demonstrate the willingness to continue supporting a child between the ages of 18 and 21 years of age by allowing the child to remain at home, as in the case at bar, then the State should be relieved of any burden of assisting with that child's support, allowing the allocation of limited public aid funds to persons who really need them ***." *Brown*, 274 Ill. App. 3d at 418.

We agree with the *Brown* court that requiring parents such as the Jacobsons to reimburse the Department for aid payments made to their children does advance the dual goals of making families responsible for their own support and of replenishing the public aid coffers so that others can be helped. We also note, however, that the same objectives would be equally well served by requiring reimbursement from parents whose children do not live with them. The principle that families who can support their own should be required to do so can be given effect regardless of where a child calls home. If the idea is to redistribute resources from those who have the ability to contribute to those who are in need, the residence of a child is immaterial. The dispositive factor is the parents' financial condition.

Although the *Brown* court believed that the legislature could reasonably have concluded that a parent's willingness to have his children reside with him was a useful gauge of his financial condition, we are unpersuaded by its position. A parent's decision to take in a child between the ages of 18 and 21 who would otherwise be emancipated can be motivated by any number of considerations. In some cases it might spring from pity, compassion, a sense of duty, or a need for companionship. The parent may be infirm or disabled and require help with his personal affairs. Care for the child's children may be an issue. In other situations, the parent may simply have more living space than he needs at the moment.

The economic factors at work do not lend themselves to easy analysis. While it may be true that most children between 18 and 21 who live with their parents do so because they cannot afford to live independently, it is far from clear that the parents who allow such children to live with them do so because they have superior economic resources. To the contrary, such families may be among the poorest. Maintaining separate households may be prohibitively expensive, and pooling resources may be the only way for them to survive. These families allow the children to stay not because they are able to support them, but because without the children, they could not support themselves.

Where that is the case, the statutory scheme created by section 10—2 has the anomalous result of imposing the heaviest burden of support on the families who are least able to afford it. They struggle to help their families survive, and must then reimburse the State for the privilege. By contrast, wealthier parents who are fortunate enough to have the resources to help their children pay for separate apartments have no obligation to the State at all.

The *Brown* court dismissed this anomaly on the theory that where the child lives with the parents, the parents share in the child's welfare benefits, so it is not unfair to make them pay the money back. What the *Brown* court failed to appreciate, however, is that even if such parents are helped by the benefits, the presence of the child in their home means that they also have expenses that other parents do not have to bear.

In any case, under the *Brown* court's own analysis, the concept of reimbursement has nothing to do with whether a parent derives some direct pecuniary benefit from the aid payments. It is supposed to be based on the parent's ability to pay. As we have just discussed, that is something that cannot necessarily be gauged by

whether or not the parent agrees to allow an 18- through 20-year-old child to reside with him.

Another reason given by the *Brown* court to justify the statutory distinction between parents whose children live at home and those whose children reside elsewhere is the need to reduce or eliminate the possibility of abuse of the public aid system. Although the elimination of such abuse is certainly a commendable goal, we fail to see, and the appellate court did not explain, how that goal is served here. The AFDC payment is intended simply to bring the child up to the standards the Department has established. It is supplementary in nature. See 305 ILCS 5/4—1.6 (West 1992). If an 18-, 19- or 20-year-old child residing at home qualifies for AFDC benefits, this means that, in the Department's estimation, the household is still not providing adequate support. With the AFDC payment, which is made to the child in cases such as this rather than the parents, the best the child can hope for is to make up the shortfall. There is no opportunity for him or her to garner excess funds.

The situation would be different, of course, if the child or the child's family deliberately provided incorrect information to the Department regarding their financial situation. Where that occurs, the problem of improper payments is undeniable. We note, however, that the falsification of claims can happen regardless of where the child resides. There is no basis for assuming that it is any more likely to take place when the child lives with the parents.

Wholly aside from these problems, we must reject the appellate court's analysis in *Brown* because there is an additional policy consideration behind the Public Aid Code that the *Brown* court has overlooked. As previously indicated, the General Assembly has specifically declared that "[t]he maintenance and strengthening of

the family unit shall be a principal consideration" and "[a]ll public aid policies shall be formulated and administered to achieve this end." 305 ILCS 5/1—1 (West 1992). Rather than advancing this basic precept of the Public Aid Code, the distinction drawn by section 10—2 provides households with a direct financial incentive to cast out their 18- through 20-year-old children who are in need. By forcing the children to live elsewhere, the parents can avoid all financial liability to the children or the State, regardless of their wealth. It is only when they allow the children to reside with them in their homes that a financial obligation attaches. Section 10—2 of the Code thus operates, in effect, as a tax on parents for co-residency with their offspring. There is no conceivable way such an arrangement can serve to strengthen family unity. It is, in the words of the appellate court in this case, "directly at odds with the stated purpose of the Code." 269 Ill. App. 3d at 368.

For the foregoing reasons, we agree with the appellate court here that the distinction drawn by section 10—2 of the Code between parents whose 18- through 20-year-old children reside with them and those whose 18- through 20-year-old children reside elsewhere violates equal protection and is therefore invalid. Contrary to the trial court, we fail to see how the statute can be salvaged by incorporating the guidelines set forth in sections 504 and 505 of the Marriage and Dissolution of Marriage Act (750 ILCS 5/504, 505 (West 1992)). Application of such guidelines may ameliorate the burden on parents who are under a support obligation, but it does not avoid the inequity that results from exempting some parents from support obligations completely based on reasons that have no rational relationship to the purpose of the statute.

The Department argues, in the alternative, that even if the distinction drawn by the statute is unconsti-

tutional, the law need not be declared invalid in its entirety. According to the Department, we should simply set aside that portion of section 10—2 which exempts from financial responsibility parents whose 18- through 20-year-old children do not live with them. In the Department's view, such an approach would eliminate any disparate treatment, but preserve a basic responsibility of parents to support their children until they turn 21.

The Public Aid Code does contain a severability clause which provides that "[s]hould any Section, subdivision, clause, phrase, or provision of this Code be held to be unconstitutional or invalid *** such holdings shall not affect the validity of the remaining portions of this Code." 305 ILCS 5/13—4 (West 1992). This court has repeatedly noted, however, that statutory severability clauses are not conclusive. They serve only to establish a presumption that the legislature intended for an invalid statutory provision to be severable. *People ex rel. Chicago Bar Association v. State Board of Elections*, 136 Ill. 2d 513, 532 (1990). The presumption will be overcome and the entire provision held unconstitutional if the legislature would not have passed the statute with the invalid portion eliminated. *Northern Illinois Home Builders Association, Inc. v. County of Du Page*, 165 Ill. 2d 25, 48 (1995).

For the reasons given by the appellate court, we believe that such is the case here. Considering the history of amendments to the law, we agree that the legislature would not have enacted the statute without inclusion of the exception for parents whose 18- through 20-year-old children do not live with them. In one limited respect, the appellate court's judgment must nevertheless be modified. Although the appellate court invalidated section 10—2 in its entirety, there is no basis for casting aside the first sentence of the statute, which

deals with the wholly unrelated subject of the support obligations between husbands and wives. Likewise, there are no grounds to jettison the second paragraph of the statute, which begins with the phrase "In addition to the primary obligation of support imposed upon responsible relatives ***." 305 ILCS 5/10—2 (West 1992). These provisions are severable and remain valid.

The judgment of the appellate court, as modified by this opinion, is therefore affirmed.

*Affirmed as modified.*