2014 IL App (5th) 130151WC

Opinion filed June 9, 2014

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

_____

| | | |
|---|---|---|
| JACK CARTER, | ) | Appeal from the Circuit Court |
| | ) | of the Twentieth Judicial Circuit, |
| | ) | Randolph County, Illinois. |
| Appellant, | ) | |
| | ) | |
| v. | ) | Appeal No. 5-13-0151WC |
| | ) | Circuit No. 11-MR-25 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | Honorable |
| COMMISSION *et al.* (Old Ben Coal Co./ | ) | Richard A. Brown, |
| Horizon Natural Resources, Appellee). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Hoffman, Hudson, Harris, and Stewart concurred in the judgment and opinion.

_____

**OPINION**

¶ 1    The claimant, Jack Carter, filed a claim against Old Ben Coal Co./Horizon Natural

Resources (the employer) under the Workers' Occupational Diseases Act (the Act) (820 ILCS

310/1 *et seq.* (West 2008)) alleging coal workers' pneumoconiosis and claiming a last exposure

date of September 24, 2004.  Medical evidence presented at the hearing indicated that the

claimant was diagnosed with chronic obstructive pulmonary disease (COPD) caused in part by

exposure to coal dust but was not diagnosed with coal workers' pneumoconiosis.  The arbitrator

found that the claimant's claim was time-barred because it was not filed within the three-year

statute of limitations applicable to claims alleging occupational diseases other than coal workers' pneumoconiosis. See 820 ILCS 310/6(c) (West 2008).

¶ 2     The claimant appealed the arbitrator's decision to the Illinois Workers' Compensation Commission (the Commission), arguing that the arbitrator erred by applying the Act's three-year statute of limitations to the claimant's claim rather than the five-year statute of limitations governing claims for disability caused by "coal miners pneumoconiosis." The Commission unanimously affirmed the arbitrator's decision.

¶ 3     The claimant then sought judicial review of the Commission's decision in the circuit court of Randolph County, which confirmed the Commission's ruling. The claimant filed a motion to reconsider the court's ruling in which he argued for the first time that the "statutory scheme devised by the Illinois legislature" (*i.e.*, the legislature's enactment of a five-year statute of limitations for "coal miners pneumoconiosis" and a three-year statute of limitations for other pulmonary conditions like COPD) "violates the Equal Protection Clause of the Illinois Constitution." The circuit court denied the claimant's motion to reconsider. This appeal followed.

¶ 4                                FACTS

¶ 5     For more than 22 years, the claimant worked for the employer as a coal miner. Although he spent one year working above ground, 90% percent of his career with the employer was spent underground. During his employment, the claimant was exposed to coal dust both underground and above ground. During the dustiest conditions he encountered underground, the claimant could only see 10 to 15 feet in front of him. In lighter dust he could see approximately 30 to 40 feet.

¶ 6    The employer's mine closed on September 24, 2004.  That was the claimant's last day at the mine and his last exposure to coal dust.  Before his last day, the claimant told two foremen that he was having breathing problems.  He said that he was experiencing "congestion."  He did not mention that he thought he had black lung or coal workers' pneumoconiosis.

¶ 7    On September 3, 2008, the claimant filed an application for adjustment of claim with the Commission seeking benefits under the Act for heart, lung, and breathing problems (including pneumoconiosis) caused by exposure to coal dust, rock dust, fumes, and vapor during the course of his employment.  On December 15, 2008, the claimant filed a claim under the federal Black Lung Benefits Act (30 U.S.C. § 901 *et seq.* (2006)).

¶ 8    The claimant's union recommended that the claimant be evaluated by Dr. William Houser, who is board certified in internal medicine and pulmonary disease.  On February 16, 2009, Dr. Houser examined the claimant in connection with the claimant's federal claim for black lung benefits.  The claimant told Dr. Houser that he had smoked 1½ packs of cigarettes per day from age 16 through age 30.  Dr. Houser noted that the claimant rode his bicycle up to 10 miles per day, 3 times per week in the summertime.  An x-ray of the claimant's chest was interpreted as negative for coal workers' pneumoconiosis by Dr. Daniel Whitehead, a B-reader.  The claimant's arterial blood gas testing levels were normal.  However, a spirometry revealed mild obstruction in the claimant's airways, primarily in his small airways.

¶ 9    Dr. Houser diagnosed mild COPD and arterial sclerotic heart disease with an "age indeterminate anteroseptal myocardial infarct."[1]  Dr. Houser opined that the claimant's COPD

---

[1]  A "myocardial infarction," commonly known as a heart attack, is a heart problem where part of the heart muscle dies and scars due to poor blood supply.  When the patient suffers an "anteroseptal" infarction, the tissue damage is centered around the anteroseptal wall, the area

was secondary to the inhalation of coal and rock dust during his work as a coal miner and his smoking history. Dr. Houser opined that the claimant's arterial sclerotic heart disease was secondary to the claimant's cigarette smoking and possibly also to hereditary factors. Dr. Houser did not diagnose coal workers' pneumoconiosis.

¶ 10    On March 23, 2009, the United States Department of Labor (the DOL) issued a Schedule for Submission of Additional Evidence (the SSAE) in connection with the claimant's federal claim for black lung benefits. The SSAE indicated that: (1) the claimant did not have pneumoconiosis caused by exposure to coal mine dust; and (2) the claimant did not have a totally disabling respiratory or pulmonary impairment caused in part by pneumoconiosis. On June 23, 2009, the DOL issued a "Proposed Decision and Order" denying benefits and finding that "the evidence does not show that the [claimant] has pneumoconiosis (black lung disease)."

¶ 11    In the instant case, the claimant introduced into evidence the expert report of Dr. Lawrence Mayer, a physician who holds a Ph.D. in epidemiology. Dr. Mayer opined that the claimant's claim should be governed by the Act's five-year statute of limitations for claims involving coal workers' pneumoconiosis, rather than the three-year statute of limitations for other claims brought under the Act. Dr. Mayer acknowledged that coal workers' pneumoconiosis and COPD affected different parts of the lungs. Specifically, he noted that pneumoconiosis involved scarring (fibrosis) on the lung tissue, whereas COPD involved damage to the broncho trachea tree. However, Dr. Mayer stated that, like coal workers' pneumoconiosis, COPD could be caused by long-term exposure to coal dust. He also noted that both conditions can significantly impair lung function and can result in death. Dr. Mayer concluded that there was "no evidence to support the suggestion that [coal workers' pneumoconiosis is] a more destructive disease than

between the left and right ventricles.

COPD." Based on these conclusions (which were drawn from Dr. Mayer's review of the relevant medical literature), Dr. Mayer opined that "from a medical and scientific viewpoint, no distinction should be made legally between a disease process that directly attacks the lung tissue [pneumoconiosis] *** and one that attacks that part of the lung that permits airflow in and out of the lung [COPD]." In other words, Dr. Mayer opined that no distinction should be drawn between coal workers' pneumoconiosis and COPD for purposes of applying a statute of limitations. He suggested that the distinction between the two conditions reflected in the Act's statute of limitations "has to be the product of thinking that COPD can never exist in a coal miner unless [there] is evidence that he or she has [pneumoconiosis]," a belief which, according to Dr. Mayer, has been proven false.

¶ 12    The arbitrator denied the claimant's claim as untimely. The arbitrator noted that the statute of limitations for claims filed under the Act (820 ILCS 310/6(c) (West 2008)) requires an employee to file his claim within three years of the last date of exposure or within two years of the last payment of compensation. The arbitrator observed that "the sole exceptions to [this] statutory requirement are for claims of coal workers' pneumoconiosis and radiological exposure, which allow for filing periods of five years and twenty-five years, respectively." The arbitrator found that there was no evidence of coal workers' pneumoconiosis or radiological exposure in this case, and no evidence that the claimant received any compensation from the employer after September 24, 2004 (the claimant's last date of exposure to coal dust). Accordingly, because the claimant filed his claim more than three years after his last date of exposure, the arbitrator found that the claim was time-barred under section 6(c) of the Act and found all remaining issues moot.

¶ 13    The claimant appealed the arbitrator's decision to the Commission, arguing that the arbitrator erred by applying the Act's three-year statute of limitations to his claim rather than the

five-year statute of limitations governing claims for disability caused by "coal miners pneumoconiosis." Citing Dr. Mayer's opinion, the claimant maintained that "the medical literature establishes that COPD caused by exposure to coal dust is a form of *** coal workers' pneumoconiosis" and that his claim should therefore be governed by the five-year statute of limitations. The Commission rejected this argument. The Commission "view[ed] itself as bound by the specific language of Section 6(c)" which "contains no specific reference to COPD and does not define coal workers' pneumoconiosis so as to include COPD." Based upon Dr. Houser's diagnosis and opinions, the Commission found that the claimant's "occupational disease claim for COPD is governed by the three-year statute of limitations and was thus not timely filed." The Commission denied the claimant's claim on that basis and found all remaining issues moot.

¶ 14    The claimant then sought judicial review of the Commission's decision in the circuit court of Randolph County, which confirmed the Commission's ruling. The circuit court found that there was "insufficient evidence" for the court to find that "the [COPD] which the claimant suffers can be considered coal miner's pneumoconiosis." The claimant subsequently filed a motion to reconsider the court's ruling in which he argued for the first time that the "statutory scheme devised by the Illinois legislature" (*i.e.*, the legislature's enactment of a five-year statute of limitations for "coal miners pneumoconiosis" and a three-year statute of limitations for other pulmonary conditions like COPD) "violates the Equal Protection Clause of the Illinois Constitution." The circuit court held that the evidence to support the claimant's equal protection claim was "insufficient" and denied the claimant's motion to reconsider. This appeal followed.

¶ 15                              ANALYSIS

¶ 16                    1.  The Governing Limitations Period

¶ 17    The claimant argues that the Commission erred in applying the Act's three-year statute of limitations to his claim, rather than the Act's five-year limitations period governing claims for disability caused by "coal miners pneumoconiosis."  The claimant contends that the phrase "coal miners pneumoconiosis" in section 6(c) of the Act should be interpreted to include COPD caused by exposure to coal dust.  This argument turns on an issue of statutory construction, a question of law which we review *de novo*.  *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12; *Wal-Mart Stores, Inc. v. Industrial Comm'n*, 324 Ill. App. 3d 961, 965 (2001).[2]

¶ 18    The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  *Gruszeczka*, 2013 IL 114212, ¶ 12.  The language used in the statute is normally the best indicator of what the legislature intended.  *Id.*  Each undefined word in the statute must

---

[2]  Although the employer concedes that the "interpretation of the statute of limitations found at 820 ILCS 310/6(c)" is subject to *de novo* review, it argues that we should apply a "clearly erroneous" standard of review to the Commission's "ultimate conclusion [as] to the facts in this case."  In support of this argument, the employer cites *Dodaro v. Illinois Workers' Compensation Comm'n*, 403 Ill. App. 3d 538, 544-45 (2010).  *Dodaro* involved a two-step analysis which required us to apply two standards of review: first, we reviewed the Commission's interpretation of the meaning of a statutory exclusion *de novo*; second, we reviewed the Commission's application of the statutory exclusion to the facts presented in that case under a more deferential "clearly erroneous" standard.  *Dodaro* is inapposite.  Unlike the situation presented in *Dodaro*, the facts essential to our analysis in this case are undisputed, and the case turns on a pure issue of statutory construction.  Thus, our review is *de novo*.  *Dodaro*, 403 Ill. App. 3d at 544-45.

be given its ordinary and popularly understood meaning. *Id.*; see also *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998). Words and phrases must not be viewed in isolation but must be considered in light of other relevant provisions of the statute. *Gruszeczka*, 2013 IL 114212, ¶ 12; *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 320 (2003). If the meaning of an enactment is unclear from the statutory language itself, the court may look beyond the language employed and consider the purpose behind the law and the evils the law was designed to remedy as well as other sources such as legislative history. *Gruszeczka*, 2013 IL 114212, ¶ 12. However, where the statutory language is clear, it will be given effect without resort to other aids for construction. *Id.*; see also *Hollywood Casino-Aurora, Inc. v. Illinois Workers' Compensation Comm'n*, 2012 IL App (2d) 110426WC, ¶ 16.

¶ 19    Section 6(c) of the Act provides, in relevant part:

> "In any case, other than injury or death caused by exposure to radiological materials or equipment or asbestos, unless application for compensation is filed with the Commission within 3 years after the date of the disablement, where no compensation has been paid, or within 2 years after the date of the last payment of compensation, where any has been paid, whichever shall be later, the right to file such application shall be barred."
>
> 820 ILCS 310/6(c) (West 2008).

In 1973, the legislature amended section 6(c) by prescribing a five-year limitations period "in cases of disability caused by coal miners pneumoconiosis."[3] As noted, the claimant argues that

---

[3]    Specifically, section 6(c) now provides that claims for disability caused by coal miners' pneumoconiosis shall be barred unless such claims are filed with the Commission "within 5 years after the employee was last exposed where no compensation has been paid, or within 5

the phrase "coal miners pneumoconiosis" in section 6(c) should be interpreted to include COPD caused by exposure to coal dust.

¶ 20    We disagree.  By its plain terms, the five-year limitations period prescribed by section 6(c) applies only to claims for disability caused by "coal miners pneumoconiosis."  It does not reference COPD.  Nor does it apply to all disabilities or respiratory conditions caused by exposure to coal dust.  To the contrary, it applies only to claims for disability caused by one specific medical condition, "coal miners pneumoconiosis."  Had the legislature intended to include claims for COPD within the five-year limitations period prescribed in section 6(c), it could have explicitly referenced COPD in that provision.  Alternatively, it could have drafted the provision broadly to include all disabilities or respiratory conditions caused by "exposure to coal dust," as it did for other types of occupational disease claims.[4]  It did neither.  Instead, the legislature decided to apply the five-year limitations period *only* to claims for disability caused by "coal miners pneumoconiosis."  Accordingly, by its plain language, section 6(c)'s five-year limitations period does not apply to disabilities caused by any other conditions, not even to other respiratory diseases that can be caused in part by exposure to coal dust, like COPD.[5]  It is

_____

years after the last payment of compensation where any has been paid."  *Id.*  In this case, the claimant's last exposure was on September 24, 2004, and the employer paid no compensation after that date.

[4]  For example, the legislature prescribed a 25-year limitations period "[i]n cases of disability caused by exposure to radiological materials or equipment or asbestos."  820 ILCS 310/6(c) (West 2008).

[5]  The claimant explicitly agreed with this conclusion in his motion for reconsideration before the circuit court.  There, the claimant stated that "the legislature promulgated a statute of limitations

undisputed that the claimant in this case was diagnosed with COPD but was not diagnosed with coal workers' pneumoconiosis. Thus, the Commission did not err in finding that section 6(c)'s five-year statute of limitations did not apply to his claim.

¶ 21 The claimant argues that, because "coal miners pneumoconiosis" is not defined in the Act, we should apply the "ordinary and popularly understood meaning" of that term, which, according to the claimant, includes COPD. The claimant asserts that the medical community recognizes that COPD caused by exposure to coal dust is a "form of" coal workers' pneumoconiosis. In support of this assertion, the claimant cites Dr. Mayer's opinion. However, contrary to the claimant's argument, Dr. Mayer did not opine that COPD was a type of coal workers' pneumoconiosis. To the contrary, he expressly acknowledged that they were different conditions. For example, Dr. Mayer noted that coal workers' pneumoconiosis is a "restrictive pulmonary impairment" of the lung tissue, whereas COPD is an "obstructive impairment" of the broncho trachea tree. Thus, Dr. Mayer acknowledged that the two conditions involve a different disease process and affect "different part[s] of the lung." Moreover, Dr. Mayer stated that the "strict medical definition of Coal Worker's Pneumoconiosis requires a finding of fibrosis (scaring) [*sic*] on the miner's lung tissue," and that this scarring "can frequently be seen on a chest x-ray." By contrast, Dr. Mayer noted that obstructive impairments like COPD are more

_____

that provides that a coal miner who has sustained damage to his lungs by means of coal dust exposure in the form of fibrosis (scaring [*sic*]) has five years to bring his or her claim," but "[a] miner who has sustained damage in the form of emphysema or other form of [COPD] has only three years to file his or her claim." As Dr. Mayer noted, coal workers' pneumoconiosis involves fibrosis (or scarring) of the lung tissue caused by exposure to coal dust.

- 10 -

readily diagnosed by pulmonary function testing and that a "chest x-ray is not a good diagnostic tool for detecting emphysema" (one of the two types of COPD). The only similarities between COPD and coal workers' pneumoconiosis noted by Dr. Mayer are that both conditions can arise from exposure to coal dust and both can result in major pulmonary impairment and death.

¶ 22    Further, one of the stated purposes of Dr. Mayer's report was to demonstrate that exposure to coal dust "can and does cause[ ] [COPD] *independent of any radiologic or other evidence of the existence of coal workers' pneumoconiosis.*" (Emphasis added.) Thus, Dr. Mayer's entire report is premised on the assumption that COPD is a different condition than coal workers' pneumoconiosis. Dr. Mayer's report reinforces this assumption by providing a detailed history of the current medical and epidemiological consensus that exposure to coal dust can cause COPD *even in the absence of coal workers' pneumoconiosis.* Accordingly, although Dr. Mayer opined that there was no scientific or medical reason to apply a different limitations period to claims by coal miners alleging COPD (as opposed to coal workers' pneumoconiosis), he never stated or implied that COPD was the same as coal workers' pneumoconiosis or that the former was a type of the latter. To the contrary, his report unequivocally provides that they are two separate conditions.[6]

---

[6] Moreover, although we have never addressed the precise question presented in this case, our appellate court has treated COPD and coal workers' pneumoconiosis as separate conditions (*i.e.*, we have assumed without deciding that they were different diseases) based on the medical evidence provided in several cases. See, *e.g.*, *Freeman United Coal Mining Co. v. Illinois Workers' Compensation Comm'n*, 386 Ill. App. 3d 779 (2008); *Shelton v. Industrial Comm'n*, 267 Ill. App. 3d 211 (1994).

¶ 23    The claimant points to two other legal provisions in support of his argument that "coal miners pneumoconiosis" includes COPD.  First, he relies upon section 1(d) of the Act (820 ILCS 310/1(d) (West 2008)).  That section provides, in relevant part, that "[i]f a deceased miner was employed for 10 years or more in one or more coal mines and died from a respirable disease there shall, effective July 1, 1973, be a rebuttable presumption that his or her death was due to pneumoconiosis."  820 ILCS 310/1(d) (West 2008).  Contrary to the claimant's argument, this provision does not suggest that COPD is equivalent to (or a type of) coal workers' pneumoconiosis.  It merely suggests that: (1) pneumoconiosis is one of multiple types of respirable diseases that can be caused by exposure to coal dust; (2) if a miner who worked in a coal mine for 10 years or more dies from a respirable disease before he is diagnosed with pneumoconiosis, there will be a presumption that his death was caused by pneumoconiosis; and (3) that presumption may be rebutted by evidence that the miner died from some other type of respirable disease, such as COPD.

¶ 24    The presumption cited by the claimant does not apply in this case, because the claimant is still alive.  But even if there was a rebuttable presumption of pneumoconiosis in this case, the presumption was rebutted by Dr. Houser, the claimant's own IME physician, who opined that the claimant did not have pneumoconiosis.

¶ 25    The claimant also relies upon certain regulations promulgated by the DOL pursuant to the federal Black Lung Benefits Act (Black Lung Act) (30 U.S.C. § 901 *et seq.* (2006)).  For purposes of the Black Lung Act, these regulations define "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment."  20 C.F.R. § 718.201(a) (2009).  This definition includes both medical (or "clinical") pneumoconiosis and statutory (or "legal") pneumoconiosis.  "Clinical

pneumoconiosis" consists of "those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1) (2009). "Legal pneumoconiosis" is defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," including "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2) (2009). The regulation defines the phrase "arising out of coal mine employment" as including any chronic pulmonary disease or respiratory or pulmonary impairment "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b) (2009).

¶ 26   The claimant correctly notes that these federal regulations define "legal pneumoconiosis" as including COPD caused by exposure to coal dust. However, this fact does not support the claimant's argument in this case because the Act does not define "pneumoconiosis" in a similar manner. Nor does it adopt or reference the federal regulations. As noted above, section 6(c) of the Act leaves the term "coal miners pneumoconiosis" undefined, and nothing in the Act suggests that the legislature intended that term to include COPD. In fact, the legislature's failure to include more expansive language supports the opposite inference, *i.e.*, that the term includes only diagnosed cases of pneumoconiosis, not COPD.[7]

---

[7] Moreover, it should be noted that, applying the more expansive definitions of pneumoconiosis contained in the federal regulations, the DOL found that the claimant did not have either medical or legal pneumoconiosis.

¶ 27    In sum, by its plain terms, the Act's five-year statute of limitations applies exclusively to "coal miners pneumoconiosis," not to COPD.  820 ILCS 310/6(c) (West 2008).  It is undisputed that the claimant was diagnosed with COPD but was not diagnosed with coal workers' pneumoconiosis.  The claimant does not argue that section 6(c) is ambiguous.  Thus, the claimant's claim for disability caused by COPD could be subject to the five-year limitations period only if "pneumoconiosis" is commonly understood as including COPD.  However, Dr. Mayer's opinion does not support this conclusion.  In fact, Dr. Mayer's expert report establishes the contrary proposition, *i.e.*, that COPD and pneumoconiosis are separate conditions.

¶ 28    Relying upon Dr. Mayer's opinion, the claimant argues that there is no medical or scientific reason for treating COPD and pneumoconiosis differently for purposes of the statute of limitations.  However, this is an argument best addressed to the legislature.  We must apply the Act's unambiguous statute of limitations as written, and we may not amend the statute under the guise of interpretation.  *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 230 (2006) ("Where, as here, the language of a statute is clear and unambiguous, the court must enforce it as written" and "may not annex new provisions or substitute different ones, or read into the statute exceptions, limitations, or conditions which the legislature did not express."); *In re Mary Ann P.*, 202 Ill. 2d 393, 409 (2002) (ruling that, where the legislature had not "seen fit to amend" a statute in the fashion advocated by the respondent, the supreme court would not "inject [that] provision into the statute" "under the guise of statutory construction"); see also *Plasters v. Industrial Comm'n*, 246 Ill. App. 3d 1, 8 (1993).

¶ 29                                    2. Equal Protection

¶ 30    The claimant argues that interpreting the five-year limitations period under section 6(c) as applying to claims for coal workers' pneumoconiosis but not to claims for COPD caused by

exposure to coal dust violates the equal protection clause of the Illinois Constitution because it treats similar classes of claimants differently without a rational basis. The claimant urges us to construe the statute in a manner that avoids this "constitutional infirmity" by applying the five-year limitations period to his claim.

¶ 31 We disagree. As an initial matter, the claimant presented an equal protection argument for the first time in a motion for reconsideration before the circuit court. Thus, the claimant forfeited the argument by not raising it before the Commission. See, *e.g.*, *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 397 (2002) (finding constitutional argument waived where it was raised before the circuit court but not before the administrative agency).[8] Although administrative agencies "lack[ ] the authority to invalidate a statute on constitutional grounds or to question its validity" (*id.*), it is " '[n]onetheless *** advisable to assert a constitutional challenge on the record before the administrative tribunal, because administrative review is confined to the proof offered before the agency' " (*id.* (quoting *McGaw*, 182 Ill. 2d at 278-79)). Such a practice avoids piecemeal litigation and allows opposing

---

[8] Moreover, the equal protection argument the claimant raised in the circuit court is different from the equal protection argument he raises on appeal. Before the circuit court, the claimant argued that "statutory scheme devised by the Illinois legislature" in section 6(c) violated the equal protection clause. On appeal, he argues that the Commission's and the circuit court's *interpretation* of that statutory scheme to exclude his claim from the Act's five-year limitations period violates the equal protection clause, and he disavows any argument that the statute itself is unconstitutional. Accordingly, the claimant arguably forfeited the argument he makes on appeal by not raising it before either the Commission or the circuit court.

parties to present evidence and to build a record in opposition to a constitutional challenge. *Carpetland U.S.A.*, 201 Ill. 2d at 397; *McGaw*, 182 Ill. 2d at 279.

¶ 32    We recognize that the rule that issues or defenses not raised before an administrative agency will be deemed waived and will not be considered for the first time on administrative review is "an admonition to the parties, not a limitation on the court's jurisdiction," and that "the waiver rule may be relaxed in order to maintain a uniform body of precedent or *** where the interests of justice so require." *Daniels v. Industrial Comm'n,* 201 Ill. 2d 160, 172 (2002). However, this is not such a case.  If we are to consider whether it would be unconstitutional to limit the Act's five-year limitations period to claims for coal workers' pneumoconiosis (as the Commission did in this case), the employer and the Commission should first be given the opportunity to build a record in response to the constitutional challenge.  See *Carpetland U.S.A.*, 201 Ill. 2d at 397.[9]

---

[9] The employer also argues that the claimant violated Illinois Supreme Court Rule 19 by failing to serve an appropriate notice of his constitutional claim on the Attorney General or the Commission's attorney.  Ill. S. Ct. R. 19(a) (eff. Sept. 1, 2006).  We disagree.  Supreme Court Rule 19 requires that such notice be provided when the State or the political subdivision, agency, or officer affected by the constitutional challenge "is not already a party" to the action.  *Id.*  The purpose of this notice requirement is "to afford the State *** [or] agency *** the opportunity *** to intervene in the cause or proceeding for the purpose of defending the law or regulation challenged."  Ill. S. Ct. R. 19(c) (eff. Sept. 1, 2006).  Here, the Commission is a named party to the action and has received the claimant's briefs before the circuit and appellate courts.  Thus, Rule 19 does not require the claimant to provide additional notice to the Commission's attorney.  Moreover, on appeal, the claimant is challenging the constitutionality of the Commission's and

¶ 33     In any event, if we were to address the claimant's constitutional argument, we would reject it.  The equal protection clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) requires the government to "treat similarly situated individuals in a similar manner." *Byrd v. Hamer*, 408 Ill. App. 3d 467, 490 (2011).  It does not preclude the State from enacting legislation that draws distinctions between different categories of people, but it does "prohibit the government from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation." *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 322 (1996).  In reviewing a claim that a statute violates equal protection, the court applies different levels of scrutiny depending on the nature of the statutory classification involved.  *Id.* at 322-23.  Classifications based on race, national origin, sex, or illegitimacy, and classifications affecting fundamental rights receive heightened scrutiny.  *Id.* at 323.  In all other cases, the court employs only a "rational basis review." *Id.*  As the claimant correctly notes, rational basis review applies in this case.

¶ 34     Whether a rational basis exists for a classification presents a question of law, which we consider *de novo*.  *Cutinello v. Whitley*, 161 Ill. 2d 409, 417 (1994).  Under the rational basis test, a court's review of a legislative classification is "limited and generally deferential." *Jacobson*, 171 Ill. 2d at 323.  The court simply inquires whether the method or means employed in the

_____

the circuit court's *interpretation* of section 6(c) of the Act (which he deems erroneous), not the constitutionality of the statute itself.  Thus, the claimant does not need to provide notice of this argument to the Attorney General.  The claimant arguably should have provided notice to the Attorney General when he challenged the constitutionality of section 6(c) of the Act before the circuit court.  However, he has abandoned that challenge on appeal, so such notice is no longer required.

statute to achieve the stated goal or purpose of the legislation is rationally related to that goal. *Id.* at 323-24; see also *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 74 (1990). The legislation "carries a strong presumption of constitutionality," and "if any set of facts can reasonably be conceived to justify the classification, it must be upheld." *Jacobson,* 171 Ill. 2d at 324.

¶ 35    Interpreting section 6(c)'s five-year statute of limitations as applying only to claims involving coal workers' pneumoconiosis (and not to claims involving COPD caused by exposure to coal dust), does not violate the equal protection clause because this interpretation of the statute does not treat "similarly situated" individuals differently. All coal miners diagnosed with coal workers' pneumoconiosis have five years to file their claims, and all coal miners diagnosed with COPD (but not pneumoconiosis) have three years to file their claims. As noted above, coal workers' pneumoconiosis and COPD are different conditions which involve different disease processes that affect different parts of the lung and that are diagnosed through different procedures. Thus, miners suffering from pneumoconiosis are not "similarly situated" to miners suffering from COPD, even where the COPD is caused by exposure to coal dust. Because these miners are not similarly situated, the government may treat them differently without running afoul of the equal protection clause.

¶ 36                                        CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Randolph County, which confirmed the Commission's ruling.

¶ 38    Affirmed.

2014 IL App (5th) 130151WC

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| JACK CARTER, | ) | Appeal from the Circuit Court |
| | ) | of the Twentieth Judicial Circuit, |
| | ) | Randolph County, Illinois. |
| Appellant, | ) | |
| | ) | |
| v. | ) | Appeal No. 5-13-0151WC |
| | ) | Circuit No. 11-MR-25 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | Honorable |
| COMMISSION *et al.* (Old Ben Coal Co./ | ) | Richard A. Brown, |
| Horizon Natural Resources, Appellee). | ) | Judge, Presiding. |

---

**Opinion Filed:**         June  9, 2014

---

**Justices:**         Honorable William E. Holdridge, P.J.

Honorable Thomas E. Hoffman, J.,
Honorable Donald C. Hudson, J.,
Honorable Thomas M. Harris, Jr., J., and
Honorable Bruce D. Stewart, J.
Concur

---

**Attorney
for
Appellant**

Darrell Dunham, Darrell Dunham & Associates, 308 West Walnut Street, Carbondale, IL 62903

---

**Attorney
for
Appellee**

Cheryl L. Intravaia, Feirich/Mager/Green/Ryan, 2001 West Main Street, P.O. Box 1570, Carbondale, IL 62903-1570

---