2018 IL App (1st) 180003

FIFTH DIVISION
December 21, 2018

No. 1-18-0003

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| | ) | |
| CITY OF CHICAGO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 17 MC1 20005601 |
| | ) | 17 MC1 20057601 |
| TYEWON HAYWOOD, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Martin Paul Moltz, |
| | ) | Judge, Presiding. |

JUSTICE HALL delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from an order of the circuit court of Cook County finding that section

10-8-505(a) of the Municipal Code of Chicago (Chicago Municipal Code), Selling Tickets Near

a Stadium or Playing Field (Chicago Municipal Code §10-8-505(a) (added Dec. 4, 2002)), was

facially unconstitutional.  The circuit court also found that defendant was not liable for violating

that section after he was arrested twice for selling or offering to sell tickets to a Chicago Cubs

game within 2000 feet of Wrigley Field. On appeal, the City of Chicago (the City) contends that the circuit court erred in *sua sponte* declaring section 10-8-505 facially unconstitutional and finding defendant not liable for violating it. For the following reasons, we reverse and remand.

¶ 2 Although defendant has not filed a brief on appeal, we will consider the appeal pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33 (1976).

¶ 3 BACKGROUND

¶ 4 Defendant Tyewon Haywood was arrested twice in 2017 for selling or offering to sell Chicago Cubs tickets within 2000 feet of Wrigley Field in violation of section 10-8-505 of the Chicago Municipal Code. Chicago Municipal Code §10-8-505 (added Dec. 4, 2002). He appeared *pro se* in the circuit court for trial on both alleged violations on October 13, 2017.

¶ 5 During trial, the City presented testimony from Chicago police sergeant Michael Trepelas about defendant's July 24, 2017, arrest. He identified defendant in court and testified that he saw defendant on the public way at the intersection of Sheffield Avenue and Addison Street, approximately 10 to 15 feet from Wrigley Field. Defendant was holding two fingers up and saying "tickets tickets tickets." In the officer's experience, this indicated that defendant was attempting to sell tickets. Because defendant was unable to produce any identification when questioned, Sergeant Trepelas stated that he had to arrest him instead of issuing an administrative notice of violation (a ticket).

¶ 6 The City also presented testimony from Chicago police officer Scott Flores relevant to defendant's August 29, 2017, arrest. He identified defendant in court and testified that he saw defendant on the public way at the intersection of Clark and Addison Streets, approximately 50 feet from the stadium. Defendant handed tickets to an individual in exchange for cash. When

Officer Flores approached defendant, defendant admitted that he did not have a license to sell tickets. Defendant was arrested and during a search incident to arrest, Officer Flores recovered nine tickets for that day's Chicago Cubs game.

¶ 7 The circuit court found that evidence of defendant's guilt was "overwhelming." However, the court found defendant not liable for violating the ordinance on the ground that it was "blatantly unconstitutional" because it would apply to a person attempting to sell a ticket for an event "for either face value or below." By way of example, the court noted that a person could be found guilty under this section for "innocently" trying to sell a ticket when someone was sick or could not make it to a game and they were not trying to make any money out of it. The court further stated:

> "I have Bear[s] season game tickets. There are many games where
>
> the person I am going with can't go and a lot of times I sell them
>
> for $50 under what I pay just so somebody can see the game.
>
> Under this ordinance, I would be guilty and subject to a fine."

The court stated that if the ordinance were rewritten to apply only to sales "for over face value," then it would be constitutional.

¶ 8 The City explained that it was concerned with transactions on public property near the stadium and the ordinance furthered the City's interest in preventing unlicensed and potentially fraudulent ticket sales. The circuit court, while acknowledging that the City could ban selling tickets for profit or selling fake tickets, found the ordinance unconstitutional and stated that the City "need[s] to rewrite it" to cover sales for more than face value or sales of "fake tickets," and not a person who innocently tries to sell a ticket for below or at face value. Judgment was then entered in favor of defendant.

¶ 9    The City filed a motion to reconsider, arguing that the circuit court should not have *sua sponte* raised the affirmative defense of unconstitutionality on defendant's behalf, which defendant failed to raise and thus waived the argument. The City also argued that the ordinance satisfied rational basis because it furthered its interests in public safety and welfare as well as in "moving foot traffic along."

¶ 10    During the hearing on the City's motion, the circuit court again stated that an ordinance which addressed problems of people selling counterfeit tickets or charging an inflated price would easily pass constitutional scrutiny, but that the ordinance was overbroad because it would apply to an innocent person selling or trying to sell a ticket at or below face value. The court further noted that such person "could be guilty of a criminal offense," and that such conduct was not something people should receive "a criminal record over." The court concluded that the ordinance was facially invalid because it was overbroad and denied the City's motion. This appeal followed.

¶ 11                                ANALYSIS

¶ 12    The question before us in this appeal is whether section 10-8-505 of the Municipal Code violates the first amendment's overbreadth doctrine on its face.

¶ 13    In construing the validity of a municipal ordinance, the same rules apply as those which govern statutory construction. *City of Chicago v. Alexander*, 2015 IL App (1st) 122858-B, ¶ 18. Like statutes, municipal orders are presumed constitutional. *Chicago Allis Manufacturing Corp. v. Metropolitan Sanitary District of Greater Chicago*, 52 Ill. 2d 320, 327 (1972). The party challenging the ordinance has the burden of establishing a constitutional violation. *Alexander*, 2015 IL App (1st) 122858-B, ¶ 18. We review the constitutionality of an ordinance *de novo*. *Alexander*, 2015 IL App (1st) 122858-B, ¶ 18.

¶ 14    The procedural posture of this case is unique because defendant did not challenge the constitutionality of section 10-8-505 of the Chicago Municipal Code and the circuit court's ruling that this section violated the first amendment as overbroad was *sua sponte*.  See *In re Rodney H.*, 223 Ill. 2d 510, 516-17 (2006).

¶ 15    A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to successfully raise because an enactment is typically considered facially invalid only if no set of circumstances exist under which it would be valid.  *U.S. v. Salerno*, 481 U.S. 739, 745 (1987); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008); *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008).  However, a facial challenge based on first amendment overbreadth is provided out of concern that the threat of enforcement of an overbroad law may chill or deter constitutionally protected speech, especially when the statute imposes criminal penalties. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). Recognizing that overbreadth invalidation is a "strong medicine," a law may be invalidated as overbroad only if a substantial number of its applications to protected speech are unconstitutional, judged in relation to the statute's plainly legitimate sweep.  *United States v. Williams*, 553 U.S. 285, 292-93 (2008); *Hicks*, 539 U.S. at 119-20.

¶ 16    Facial challenges are disfavored for several reasons.  *Grange*, 552 U.S. at 450.  Claims of facial invalidity often rest on speculation that raise the risk of "premature interpretation of statutes on the basis of factually barebones records" (*Sabri v. United States*, 541 U.S. 600, 609 (2004)); they run contrary to the fundamental principle of judicial restraint that courts should not anticipate a question of constitutional law before the necessity of deciding it or create a rule of constitutional law broader than necessary to decide the precise question before it (*Ashwander v. TVA*, 297 U.S. 288, 346-47 (1936)); and they threaten to short-circuit the democratic process by

preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution (*Grange*, 552 U.S. at 450-51).

¶ 17    Here, the circuit court found that section 10-8-505 was overbroad. We disagree.

¶ 18    The overbreadth doctrine is designed to protect the first amendment freedom of expression from laws written so broadly that the fear of punishment might discourage people from taking advantage of this elemental freedom guaranteed by both our federal and state constitutions. *City of Chicago v. Powell*, 315 Ill. App. 3d 1136, 1145 (2000), (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). A statute will be invalidated as overbroad if it criminalizes a substantial amount of protected behavior when judged in relation to the law's "plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

¶ 19    Our examination of the ordinance at issue reveals that the overbreadth doctrine does not apply because the ordinance does not address any first amendment rights. Instead, the ordinance only addresses conduct, namely ticket sales on the public way. The City holds the title to streets in trust for the people. *City of Chicago v. Rhine*, 363 Ill. 619, 621 (1936); *Bond v. Dunmire*, 129 Ill. App. 3d 796, 807 (1984). A regulation of sales on the public way is a regulation of conduct, not speech. See *City of Blue Island v. Kozul*, 379 Ill. 511, 517 (1942) (as long as the legislation does not abridge speech it may lawfully regulate the conduct of those using the streets). Thus the circuit court erred in finding that section 10-8-505 was facially unconstitutional as overbroad.

¶ 20    We therefore apply the standard analysis for facial constitutional challenges to legislation and must determine whether section 10-8-505 is facially invalid in all circumstances. See *Salerno*, 481 U.S. at 745; *Grange*, 552 U.S. at 449); *Napleton*, 229 Ill. 2d at 305-06.

¶ 21    The trial court did not articulate the nature of the right upon which the ordinance infringes, finding only that the ordinance was facially unconstitutional because it could presumably criminalize innocent conduct.

¶ 22    Classification of the right affected dictates the level of scrutiny to be applied by a reviewing court in determining whether the statute in question is in accordance with the constitution. *Napleton*, 229 Ill. 2d at 307. Where the right infringed upon is a fundamental right, the statute is subject to strict scrutiny analysis. *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 323 (1996). Fundamental rights are only those which "lie at the heart of the relationship between the individual and a republican form of nationally integrated government." *People ex rel. Tucker v. Kotsos*, 68 Ill. 2d 88, 97 (1977); *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 35 (1996). Fundamental rights include the expression of ideas, participation in the political process, travel among the states and privacy with regard to the most intimate and personal aspects of one's life. *Kotsos*, 68 Ill. 2d at 97. In order to survive strict scrutiny, the measures employed by the government body must be necessary to serve a compelling state interest, and must be narrowly tailored to it. *Napleton*, 229 Ill. 2d at 307.

¶ 23    Where a statute does not affect a fundamental constitutional right, it is subject to the rational basis test. *Jacobson*, 171 Ill. 2d at 323. To satisfy the rational basis test, a statute must only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute and the means adopted must be a reasonable method of accomplishing the desired objective. *Jacobson*, 171 Ill. 2d at 323. Rational basis review is highly deferential to the legislature; it does not focus on the wisdom of the statute or whether it is the best means to achieve the desired outcome. See *Shachter v. City of Chicago*, 2011 IL App (1st) 103582, ¶ 99. Rather, as long as there is a conceivable basis for finding the statute rationally related to a

legitimate state interest, the law must be upheld. *Szczurek v. City of Park Ridge*, 97 Ill. App. 3d 649, 704 (1981). Most importantly, under rational basis review, a statute is not unconstitutional "if any state of facts reasonably may be conceived to justify it." *McGowen v. Maryland*, 366 U.S. 420, 426 (1961); *Illinois Housing Development Authority v. Van Meter*, 82 Ill. 2d 116, 122 (1980).

¶ 24    Under the definitions noted above, the "right" to sell tickets for sporting events within 2000 feet of a stadium is not a fundamental right.  See *Kotsas*, 68 Ill. 2d at 97. As such, we will apply the rational basis test in determining the constitutionality of the ordinance.

¶ 25    We first examine the ordinance.  A court cannot determine whether a statute reaches too far without first knowing what the statute covers.  *United States v. Stevens*, 559 U.S. 460, 474 (2010).

¶ 26    Section 10-8-505(a), Selling Tickets Near a Stadium or Playing Field, states, in pertinent part:

> "It shall be unlawful for any person, while located on
>
> the public way within 2,000 feet of a stadium or playing field,
>
> to sell, offer, or expose for sale, or solicit any other person to
>
> purchase tickets for any amusement produced or presented
>
> in that stadium or playing field."  Chicago Municipal Code
>
> §10-8-505(a) (added Dec. 4, 2002).

¶ 27    On its face, the ordinance seeks to prohibit any ticket sales, offers or solicitation of ticket sales on the public way within 2000 feet of a stadium for tickets to events in such stadium.  The punishment for violation of any part of this section is subject to a fine of not less than $50 nor

more than $200. Chicago Municipal Code §10-8-505(c) (added Dece. 4, 2002). The City contends that the ordinance is rationally related to its interests in promoting public safety and welfare. We agree.

¶ 28    The City has the power to adopt ordinances tending to promote the general welfare of the public in the use of the streets, including the right to regulate sales on streets and sidewalks. See *Rhine*, 363 Ill. at 621. Moreover, in the exercise of the police power, government may act to regulate, restrain or prohibit that which is harmful to the public welfare even if such regulation might interfere with the liberty or property of an individual. *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 368 (1985). The United States Supreme Court has recognized that the concept of public welfare is broad and inclusive. *Berman v. Parker*, 348 U.S. 26, 33 (1954); *Schacter*, 2011 IL App (1st) 103582, ¶ 100.

¶ 29    The basic purpose of a street is to provide a way for traffic, both pedestrian and vehicular, to the public, and the public is rightfully entitled to the use of such thoroughfare free of all obstructions and impediments which tend to delay or obstruct traffic or annoy the public use of the streets. *People ex rel. Herman Armanetti, Inc. v. City of Chicago*, 415 Ill. 165, 168 (1953). The City may carry out its trusteeship over streets by regulating and controlling their use for the primary purpose for which they are created pursuant to specific powers designated by the legislature. *Herman Armanetti*, 415 Ill. at 168.

¶ 30    In this case, the ordinance regulates and controls the use of the public way outside of stadiums. We find section 10-8-505(a) of the Chicago Municipal Code to be within the powers of the City to regulate the use of streets and other municipal property and to regulate traffic and sales on the street. See *Good Humor Corp. v. Village of Mundelein*, 33 Ill. 2d 252, 257 (1965) (right to regulate sales on streets and sidewalks includes the right to suppress sales). We

conclude that the prohibition against selling tickets near a stadium or playing field is rationally related to the City's interests in public safety and welfare.

¶ 31                                         CONCLUSION

¶ 32     For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for proceedings consistent with this opinion.

¶ 33     Reversed and remanded.